

EXHIBIT A

# National Machine Tool Financial Corporation — Lease Agreement

| Commitment Date | LEASE AGREEMENT NO. |
|---|---|
| Lease Commencement Date 1/21/06 | 65573000 |

| | | |
|---|---|---|
| **FULL LEGAL NAME OF LESSEE**<br>Korle Bu Medical Group, Ltd. | **TAXPAYER ID# (TIN)**<br>841633320 | **NAME OF EQUIPMENT VENDOR/SUPPLIER**<br>Zonare |
| **BILLING ADDRESS:**<br>2929 South Ellis Ave, Chicago, IL 60616 | | 1061 Terra Bella Ave, Mountainveiw, CA 94043 |
| **CONTACT.**<br>Dr. John Awah | **PHONE #:**<br>312-791-2943 | **CONTACT:** Keith Rubenstein    **PHONE #** 773-294-5030 |

| QUANTITY | MAKE | MODEL, FEATURES AND SERIAL NUMBERS |
|---|---|---|
| | | See Addendum A |

**EQUIPMENT LOCATION (If Different Than Billing Address):** 3055 S. Cottage Grove    **ADDITIONAL PROVISIONS:**
STREET   CITY   COUNTY   STATE   ZIP CODE    Chicago, IL 60616

| INITIAL TERM (Months) | PAYMENT FREQUENCY | TOTAL NUMBER OF PAYMENTS | AMOUNT OF EACH LEASE PAYMENT + | SALES/USE TAX = | TOTAL PAYMENT |
|---|---|---|---|---|---|
| 60 | Monthly | 60 | $1,645.00 | $143.94 | $1,788.94 |

| FIRST PAYMENT + | LAST PAYMENT(S) + | SECURITY DEPOSIT + | PROCESSING FEE = | TOTAL ADVANCE PAYMENTS (Enclose Check for this Amount) |
|---|---|---|---|---|
| $0.00 | $0.00 | $ | $ 0.00 | |

**TERMS AND CONDITIONS**    **THIS IS A NON-CANCELABLE LEASE — PLEASE READ CAREFULLY**

Lessor and lessee, INTENDING TO BE LEGALLY BOUND, hereby agree as follows:

1. LEASE. Subject to the terms and conditions hereof, lessor hereby leases to lessee and lessee hereby leases from lessor the personal property described above, or if separately scheduled, in the schedule annexed hereto and made a part hereof, together with all replacements thereof and parts, repairs, improvements, additions, accessions and accessories now or hereafter incorporated therein and/or affixed thereto (all of the aforesaid personal property and other items being hereinafter individually and collectively referred to as the "equipment". Lessee hereby authorizes lessor and appoints lessor as its attorney in fact to insert in this lease the serial numbers and other identification data pertaining to the equipment when the same is/are determined by lessor.

2. TERM. The term ("term") of this lease commences upon the date on which lessor accepts this agreement, and ends upon the expiration of the number of months specified above as "number of payments" after the "lease commencement date" listed above. Lessee hereby authorizes lessor and appoints lessor as its attorney in fact to insert in this lease as the "lease commencement date", the date upon which the equipment is delivered to and accepted by lessee or any later date selected by lessor. Lessee further authorizes lessor and appoints lessor as its attorney in fact to insert in this lease any additional information necessary to complete the lease and, in furtherance of such authorization, to complete any blank space in the lease with the appropriate information and such additional information shall become part of this lease.

3. LEASE PAYMENTS. During the term of this lease and without deduction, reduction, set off or counterclaim, lessee shall pay lease payments ("lease payments") in advance in such amounts (based upon the "amount of each monthly lease payment" and applicable sales tax) and at such intervals as stated above. The first lease payment shall be due and payable on the date set forth as the "payment commencement date". Subsequent lease payments shall be due and payable in advance for the term, at the frequency and in the amount stated above. Lease payments shall be due and payable whether or not lessee has received any notice that such payments are due. All lease payments shall be paid to lessor at its address set forth above or as otherwise directed by lessor in writing. No portion of any lease payment shall be deemed to constitute payment for any equity interest in the equipment. In no event shall any advance lease payments or other amounts paid by lessee in advance pursuant to this lease or otherwise bear interest.

4. NO WARRANTIES BY LESSOR OR ASSIGNEE OF LESSOR. Lessee acknowledges that it has selected both (a) the equipment and (b) the supplier from whom lessor is to purchase said equipment. In this respect, lessee acknowledges that lessor is neither the manufacturer of said equipment nor the agent of said manufacturer. Lessee further acknowledges that lessor has not made and does not make any warranty or representation, either expressed or implied, of any kind whatsoever with respect to the equipment, including, but not limited to: (a) the fitness, design or condition of the equipment; (b) the merchantability of the equipment or its fitness for any particular purpose; (c) the quality or capacity of the equipment, the materials in the equipment, or workmanship in the equipment; (d) any latent defects in the equipment; (e) any patent, copyrights, or trade secret infringement; and (f) as to the compliance of the equipment with any requirements of any law, rule, specification, or contract pertaining thereto. Lessee further acknowledges that it is leasing said equipment from lessor in an "as is" condition and that no defect or unfitness of the equipment shall relieve lessee of lessee's obligation to pay the lease payments or any other obligation lessee may have to lessor under the terms of this lease. It is agreed that lessor shall have no obligation to install, erect, test, adjust, repair or service the aforesaid equipment. The parties agree that this lease is a "finance lease" as defined by section 2a-103(a) of the uniform commercial code (ucc). Lessee acknowledges either (a) that lessee has reviewed and approved a written supply contract covering the equipment purchased from the "supplier" thereof for lease to lessee, or (b) that lessee has been informed or advised lessee, in writing, of the following: (i) the identity of the supplier; (ii) that the lessee may have rights under the supply contract; and (iii) that the lessee may contact the supplier for a description of any such rights lessee may have under the supply contract. Lessor shall not be liable to lessee for any loss, damage or expense of any kind or nature caused, directly or indirectly, by any equipment leased hereunder or the use or maintenance thereof or the failure or operation.

5. RENEWAL Unless lessee, within sixty (60) days prior to the expiration of this lease, notifies lessor in writing of its intention to return the equipment upon the expiration date, then this lease shall automatically be extended upon all of the terms and conditions herein on a month to month lease basis until such time as written notice is received by lessor

6. TERMINATION BY LESSOR. Lessor shall have the exclusive option to terminate this lease and lessor's obligations hereunder, if within ninety (90) days after the commitment date, the equipment has not been delivered to lessee, or lessee has not accepted the equipment as provided in paragraph 1 hereof. The aforesaid option of lessor to terminate this lease may be exercised by giving lessee written notice of termination pursuant to this paragraph at any time within sixty (60) business days after expiration of the aforesaid ninety (90) day period.

7. NO CANCELLATION BY LESSEE This lease may not be canceled or terminated under any circumstances by lessee

8. Use. The equipment shall be used exclusively for agricultural, business or other commercial purposes and shall not be used at any time during the initial term of lease or any renewal term for personal, family or household purposes. In addition, the equipment shall be used according to accepted standards of use for the equipment in the industry or trade in which it is customarily used.

9. SUPPLIER NOT AN AGENT. Neither supplier, nor any salesman, employee or other agent of supplier is an agent of lessor. Neither supplier, nor any salesman, employee or other agent of supplier is authorized to waive or alter any term or condition of this lease and no representation as to the equipment or any other matter by supplier or any salesman, employee or other agent of supplier shall in any way affect lessee's duty to pay the lease payments or perform its other obligations as set forth in this lease.

10. SELECTION AND ORDERING OF EQUIPMENT. Lessee has selected both the equipment and supplier named above from whom lessor is herein requested by the lessee to purchase the equipment in order to lease the same to lessee in accordance with this lease. Lessee acknowledges that the equipment that it has selected is suitable for the purposes of its intended use. Lessee further acknowledges that this selection was not made pursuant to or in reliance upon the judgment, recommendations or representations of lessor.

11. DELIVERY AND INSPECTION Lessee shall inspect the equipment within forty-eight (48) hours after it is delivered to lessee. Unless within such forty-eight (48) hour period lessor receives written notice from lessee specifying any proper objection to the equipment, it shall be conclusively presumed, as between lessor and lessee that: (a) lessee has fully inspected the equipment; (b) the equipment is in full compliance with the terms and conditions of this lease, (c) the equipment is in good condition and repair; and (d) lessee has accepted the equipment. If lessor shall request, lessee shall promptly furnish lessor with a written statement setting forth the matters set forth in (a), (b), (c) and (d) of this paragraph and also approving the payment of the invoice pertaining to the equipment or a portion thereof.

12. OWNERSHIP, LANDLORD'S WAIVER. The equipment is, and shall at all times remain, the property of lessor and lessee shall have no right, title or interest therein or thereto except as expressly set forth in this lease. Lessor is hereby authorized by lessee, at lessee's expense, to cause the lease, or any statement or other instrument relating to this lease showing an interest of lessor in the equipment, to be filed or recorded any re-recorded. Lessee agrees to execute and deliver any statement or instrument requested by lessor for such purpose. The equipment is, and shall at all times be and remain personal property notwithstanding that the equipment, or any part thereof, may now be, or hereafter become, in any manner affixed or attached to any real property or any building thereon. Immediately upon demand therefor by lessor, lessee shall procure, for the benefit of lessor, and deliver to lessor landlord and mortgagee waivers, duly executed by the appropriate parties, pertaining to the equipment in form and substance satisfactory to lessor and in the event that lessee refuses or is unable to procure and deliver the aforesaid waivers, lessor shall have the right to suspend, terminate or cancel this lease, in whole or in part, without any liability therefor, by giving notice to lessee of such suspension, termination or cancellation, and, in addition, lessor shall have the right to declare a default under this lease and to exercise all rights and remedies of which lessor is possessed pursuant to this lease or otherwise by law or equity.

13. LOCATION, LESSOR'S INSPECTION; LABELS. The equipment shall be delivered and thereafter kept at the location specified on the reverse side hereof and shall not be removed therefrom without lessor's prior written consent. Lessor shall have the right to inspect the equipment at any time without prior notice. If lessor supplies lessee with labels which state that the equipment is owned by lessor, lessee shall affix and keep same in a prominent place on each item of equipment.

14. REPAIRS, USE; ALTERATIONS. Lessee, at its own expense, shall keep the equipment in good working condition and repair and, at its own expense, furnish all labor, parts, mechanisms and devices required therefore. Lessee shall use the equipment in a careful and lawful manner Lessee shall not make any alterations, additions or improvements to the equipment without lessor's prior written consent. All replacement of and parts, repairs, improvements, additions, accessions and accessories made to the equipment shall immediately become a component part thereof and title thereto shall be immediately vested in lessor and shall be included under the terms and conditions hereof.

15. INSURANCE. During the term of this lease, you will purchase and maintain, at your expense, a property insurance policy insuring the equipment against all risk of loss or damage in an amount not less than the replacement cost of the equipment. You will also purchase and maintain for the term of this lease, commercial general liability insurance in an amount not less than $1,000,000 per an occurrence for bodily injury and property damage liability. The policy of insurance covering the equipment will include a lendor's loss payable endorsement naming national machine tool financial corporation as sole loss payee. You will provided evidence of this insurance by sending an evidence of property insurance to national machine tool financial corporation. The commercial general liability policy will be endorsed to include national machine tool financial corporation as an additional insured, and will provide primary commercial general liability insurance for the leased equipment. You will provide evidence of this insurance by sending a certificate of insurance to national machine tool financial corporation. The insurance policy insuring the equipment and the commercial general liability policy will be endorsed to provide 30 days prior written notice of cancellation or non-renewal to national machine tool financial corporation, 80 north gordon, elk grove village, il 60007, attn insurance department. Lessee hereby assignes to lessor all rights, title and interest in and to any proceeds of such insurance.

16. LIENS, TAXES. Lessee shall keep the equipment free and clear of all levies, liens, security interests and other encumbrances of any nature. In addition, lessee shall: (a) make and file all declarations and returns in connection with all charges and taxes (local, state and federal), which may now or hereafter be imposed upon or measured by the ownership, leasing, lease, sale, purchase, possession or use of the equipment excluding however all taxes on or measured by lessor's net income; and (b) pay all such charges and taxes when the same become due. In the event that lessor shall elect to make and file any declarations or returns in connection with such charges and taxes or to pay the same, then lessee shall reimburse lessor, immediately upon demand of lessor, for any and all such charges and taxes applicable to the equipment.

17 DEFAULT AND REMEDIES. (a) the occurrence of any one of the following events will constitute a default by lessee hereunder ("event of default") (i) failure to pay or perform any of lessee's obligations under this lease within ten (10)days from the due date of payment or performance; (ii) material misrepresentation; (iii) failure to protect the equipment or lessor's ownership rights in same; or (iv) the filing of voluntary bankruptcy petition by or against lessee. (b) upon an event of default, lessor may, at its election and without notice or demand, exercise any one or more of the following remedies in order to protect the interest and reasonably expected profits and bargains of lessor: (i) upon notice to lessee terminate this lease and all lease schedules executed pursuant thereto; (ii) the occurrence of any event of default at any time thereafter, or if lessor decides, in its sole discretion, not to take possession of the equipment, lessor continues to be the owner of the equipment and may, but is not obligated to, dispose of the equipment by sale or otherwise, all of which determinations may be made by lessor in its absolute discretion and for its own account; (iii) declare immediately

due and payable all sums due and to become due hereunder for the full term of the lease (including any renewal or purchase options which lessee has contracted to pay); (iv) with or without terminating this lease, recover from lessee damages, not as a penalty, but herein liquidated for all purposes and in an amount equal to the sum of (a) any accrued and unpaid lease payments as of the date of entry of judgment in favor of lessor plus late charges and all other sums that may accrue hereunder, (b) the present value of all future lease payments reserved in the lease and contracted to be paid over the unexpired term of the lease discounted at a rate equal to the discount rate of the federal reserve bank of philadelphia as of the date of entry of judgment in favor of lessor plus one percent (1%); (c) all commercially reasonable costs and expenses incurred by lessor in any repossession, recovery, storage, repair, sale, release or other disposition of the equipment including reasonable attorneys' fees of twenty percent (20%) but in no event less than five hundred dollars ($500.00), and costs incurred in connection therewith or otherwise resulting from lessee's default (inclusive of attorneys' fees, fees of collection agencies, and other costs incurred in the collection of the balance due), (d)estimated residual value of the equipment as of the expiration of this lease or any determinable. (e) no right or remedy herein conferred upon or reserved to lessor is exclusive of any right or remedy herein or by law or equity provided or permitted, but each shall be cumulative of every other right or remedy herein or by law or equity provided or permitted, given hereunder or now or hereafter existing at law or in equity or by statute or otherwise, and may be enforced concurrently therewith from time to time.

18. LESSEE'S WAIVERS. To the extent permitted by applicable law, lessee hereby waives any and all rights and remedies conferred upon a lessee by sections 2a-508 through 2a-522 of the ucc, including, but not limited to lessee's rights to (a) cancel this lease; (b) repudiate this lease; (c) reject the equipment; (d) revoke acceptance of the equipment; (e) recover damages from lessor for any breaches of warranty or for any other reason; (f) a security interest in the equipment in lessee's possession or control for any reason; (g) deduct all or part of any claimed damages resulting from lessor's default, if any, under this lease; (h) accept partial delivery of the equipment; (i) "cover" by making any purchase or lease of or contract to purchase or lease equipment in substitution for those items due from lessor; (j) recover any general, special, incidental or consequential damages, for any reason whatsoever; (k) specific performance, replevin, detinue, sequestration, claim and delivery of the like for any equipment identified to this lease. To the extent permitted by applicable law, lessee also hereby waives any rights now or hereafter conferred by statute or otherwise which may require lessor to sell, lease or otherwise use any equipment in mitigation of lessor's damages as set forth in paragraph 17 or which may otherwise limit or modify any of lessor's rights or remedies under paragraph 17. Any action by lessee against lessor for any default by lessor under this lease, including breach of warranty or indemnity, shall be commenced within one (1) year after any such cause of action occurs.

19 INDEMNITY Lessee hereby warrants and covenants that lessee shall indemnify and hold lessor harmless of and from any and all liability, loss, damage, cost and expense, including but not limited to reasonable attorneys' fees, arising out of or otherwise pertaining in any way to the equipment, this lease or any injury to persons or property of any nature resulting from, pertaining to or based upon the actual or alleged manufacture, selection, purchase, sale, ownership, lease, delivery, possession, transportation, use or operation of the equipment or its location or condition, or any other interest of lessor in the equipment or this lease or any activity, forbearance or omission by lessor with respect to the equipment or this lease. In addition, lessee, immediately upon demand by lessor, shall satisfy, pay and discharge any and all judgments and fines which may be assessed or recovered against lessor in any action pertaining to any of the aforesaid.

20. LOSS OR DAMAGE. Lessee shall bear the entire risk of loss, theft, destruction, or damage of equipment or any portion thereof from any cause whatsoever. The liability of lessee to pay lease payments thereof may be discharged by paying the lessor a "casualty loss payment" which shall be a payment in an amount equal to the total of the following (a) any accrued and unpaid lease payments as of the date of receipt of such payment by lessor plus late charges and all other sums that may accrue hereunder, (b) the present value of all future lease payments reserved in the lease and contracted to be paid over the unexpired term of the lease discounted at a rate equal to the discount rate of the federal reserve bank of philadelphia as of the date of receipt of such payment by lessor plus one percent (1%); (c) all commercially reasonable costs and expenses incurred by lessor in any repossession, recovery, storage, repair, sale, re-lease, or other disposition of the equipment including attorneys' fees of twenty percent (20%) but in no event less than five hundred dollars ($500.00) and costs incurred in connection therewith or otherwise resulting from lessee's default (inclusive of attorneys' fees, fees of collection agencies, and other costs incurred in the collection of the balance due), (d) estimated residual value of the equipment as of the expiration of this lease or any renewal thereof (if such lease has been renewed); and (e) any indemnity, if then determinable. Except as provided in the preceding sentence, the total or partial destruction of any equipment, or total or partial loss of use or possession thereof by lessee, shall not release or relieve lessee from the duty to pay the lease payments herein provided.

21 SURRENDER At the expiration or other termination of this lease or upon demand by lessor following a default, lessee, at its own expense, shall immediately return the equipment in as good condition as received less normal wear and tear, by delivering it packed and ready for shipment, to such place or on board such carrier as lessor may require.

22 Service charge and interest. If lessee fails to pay when due any lease payment, renewal lease payment, additional lease payment or other amount required herein to be paid to lessor, and in order to defray the additional costs incurred by lessor, lessee or guarantor shall pay to lessor a service charge of seven and one-half percent (7.5%) of such amount or part thereof which shall be delinquent, or fifteen dollars ($15.00), whichever is greater, plus interest on such delinquent amount over the minimum service charge at eighteen percent (18%) per annum or the maximum rate allowable by law.

23. NOTICES. Service of all notices under this lease shall be sufficient if given personally or mailed to the party involved at its respective address set forth above, or at such other address as said party may provide in writing to the other from time to time. Any such notice mailed to said address shall be effective when deposited in the united state mail, duly addressed and with postage prepaid.

24. Security deposit. When this lease provides for a security deposit, lessor may, but shall not be obligated to, apply the security deposit to cure any default, in which event lessee shall promptly restore in full the security deposit. Upon termination of this lease and all renewals hereof and all equipment schedule(s), if lessee has fulfilled all the terms and conditions hereof and no default shall have occurred, lessor shall return to lessee any remaining balance of the security deposit. No security deposit shall earn interest.

25 ASSIGNMENT Without lessor's prior written consent, lessee shall not (a) assign, transfer, pledge, hypothecate or otherwise dispose of this lease, the equipment, or any interest therein, or (b) sublet or lend the equipment or permit it to be used by anyone other than lessee or lessee's employees Lessor may assign, grant a security interest in, or otherwise transfer this lease or the equipment, in whole or in part, without notice to lessee. Each such assignee, grantee, secured party or other transferee shall have all of the rights, but none of the obligations, if any exist, of lessor under this lease. Lessee shall not assert against any assignee, grantee, secured party or other transferee of lessor any defense, counterclaim or offset that lessee may have against lessor. Subject to the foregoing, this lease is binding upon the heirs, personal representatives, successors and assigns of the parties hereto

26 Severability If any provision of this lease or the application thereof to any party or circumstance is held invalid or unenforceable, the remainder of this lease and the application of such provision to other parties or circumstances shall not be affected thereby and to this end the provisions of this lease are declared severable

27 NO ORAL AGREEMENT. All prior conversations, agreements and representations relating to this lease or to the equipment are integrated herein. None of the terms or conditions of this lease shall be changed or modified except in writing duly executed by both lessor and lessee.

28. CAPTIONS. The captions or headings of each paragraph of this lease do not constitute part of this lease, but are for informational purposes only.

29. ADDITIONAL DOCUMENTS. Lessee authorizes lessor as its attorney-in-fact to execute on behalf of lessee and to file such financing statements and continuation statements with respect to this lease and the equipment as lessor shall deem necessary. In addition, upon demand, lessee shall cause to be executed on its behalf and delivered to lessor from time to time any and all documents necessary or desirable to establish or give notice of the interest of lessor in the equipment or this lease, and the filing costs thereof shall be the obligation of lessee and lessee shall pay the same to lessor as additional lease payments upon demand. The parties intend this transaction to be a true lease, but if any court or tribunal, having power to bind the parties, should conclude that all or part of this transaction is not a true lease but is in the nature of a sale, consignment or other transaction, the parties intend and the lessee hereby grants a continuing security interest in the equipment from the date of this lease to secure the payment of all lessee's indebtedness to lessor. In the event that lessee shall fail or refuse to promptly execute and deliver to lessor such documents, lessor, in addition to all other rights and remedies provided in this lease or otherwise by law or equity permitted, is irrevocably as its attorney-in-fact authorized by lessee, but under no duty, to execute lessee's name on any such documents. Such failure or refusal by lessee to execute or deliver documents as aforesaid, regardless of whether lessor shall exercise its aforesaid right to execute lessee's name shall constitute a default hereunder.

30 LAW AND JURISDICTION. This lease shall be governed by and construed in accordance with the laws of the state of Illinois. Lessee agrees that any actions or proceeding to which lessor is a party arising directly or indirectly from this lease, shall be litigated, at lessor's option, in any state or federal court having situs within the state of Illinois, and that said court shall have jurisdiction thereof.

31 Processing fees. Lessee agrees to pay lessor's expenses and any fees incurred in the processing of this transaction and in the investigation of the credit worthiness of lessee and guarantor(s), if any.

32 MISCELLANEOUS. All provisions of this lease are material and any default hereunder by lessee or guarantor is material and substantial. Time is of the essence. No provision of this lease may be waived except by the written consent of lessor. Lessee or guarantor shall provide lessor with such corporate resolutions, opinions of counsel, financial statements and other documents as lessor shall reasonably request from time to time If more than one lessee is named in this lease, the liability of each shall be joint and several All financial data submitted to lessor is hereby acknowledged and affirmed as true and correct copies of the signed originals.

33 FACSIMILE DOCUMENTS Lessee and lessor intend and agree that a photocopy or facsimile of this lease which includes a photocopy or facsimile of lessee's and lessor's signatures shall be treated as an original and shall be valid, authentic, and legally binding as the original-signature lease for all purposes, and shall be admissible in court as evidence of this transaction but shall not be considered chattel paper as defined by the ucc.

34. WAIVER OF JURY TRIAL Lessor and lessee both waive the right to trial by jury for any claim or action arising out of or relating to the lease or the equipment.

---

**ACCEPTED**

| LESSOR- | LESSEE: Korle Bu Medical Group, Ltd. |
|---|---|
| NATIONAL MACHINE TOOL FINANCIAL CORPORATION | SIGNATURE: [signed] |
| 80 N. Gordon St., Elk Grove Village, IL 60007 | PLEASE PRINT NAME: John ACQUAYE-AWAH |
| Phone: 800-569-7627 • FAX: 847-228-7789 | TITLE: President |
| BY: [signed] | DATE: 1/3/06 |
| TITLE: Vice President | |
| DATE: 2-28-06 | |

**GUARANTY**

INTENDING TO BE LEGALLY BOUND HEREBY, the undersigned ("Guarantor") consents to the terms and conditions of the above Lease and unconditionally and irrevocably assures and guarantees to Lessor full and timely performance and observance of all duties and obligations of Lessee under the above Lease, including without limitation prompt payment when due, whether by acceleration or otherwise, of Lease Payments, Renewal Payments, reasonable attorney's fees, costs and expenses of collection incurred by Lessor in enforcing Lessee's duties and obligations under the above Lease and all other amounts due under the Lease In addition, Guarantor shall be liable for reasonable attorney's fees, costs and expenses of collection incurred by Lessor in enforcing Guarantor's obligations under this Guaranty.

Guarantor waives all notices of any character whatsoever with respect to and consent to the taking of, or failure to take, from time to time and without notice to Guarantor, any action of any nature whatsoever with respect to the above Lease, including without limitation any and all Defaults, arrangements, renewals, extensions, modifications, postponements, compromises, indulgences, waivers, surrenders, exchanges and releases and Guarantor shall remain fully liable herein notwithstanding the foregoing.

If any provision hereof is invalid or unenforceable, the remainder hereof shall not be affected thereby and to this end the provisions hereof are declared severable In the event that more than one person executes this Guaranty, each such person shall be jointly and severally liable hereunder Any action or proceeding to which Guarantor is a party arising directly or indirectly from this Guaranty shall be litigated in any state or federal court having its situs within COOK COUNTY, ILLINOIS and Guarantor consents to the jurisdiction of such state and federal courts. This Guaranty shall be governed by and construed in accordance with the laws of COOK COUNTY, ILLINOIS.

GUARANTOR(Signature): [signed]  WITNESS: L. A. Awah  DATED: 1/3/06
Printed Name: John Awah

GUARANTOR(Signature): _____  WITNESS: _____  DATED: _____
Printed Name:

---

LEASE AGREEMENT# _____    DATED 2-28-06    PAYMENT COMMENCEMENT DATE 3-1-06



NATIONAL MACHINE TOOL FINANCIAL CORPORATION

## ADDENDUM A
Page 1 of 1

This Addendum A is attached to and made part of lease agreement dated 1/2/06 ,~~2005~~, between National Machine Tool Financial Corporation, as Lessor and Korle Bu Medical Group, Ltd., as Lessee.

| Quantity | Description | Serial Number |
|---|---|---|
| 1 | One (1) New Zonare z.One Ultrasound Unit including all attachments and accessories | SN 1156S105L |

Korle Bu Medical Group, Ltd.

By: John Acquaye-Awah

Title: President

800-669-7527
Fax: 888-901-7789

80 North Gordon
Elk Grove Village, Illinois 60007

www.netlease.com

# Rider to Lease Agreement

## By and Between
## National Machine Tool Financial Corporation

### And

## Korle Bu Medical Group, Ltd.

Anything in the Agreement to the contrary notwithstanding this paragraph and addendum shall take precedence and shall be binding:

At maturity of the Agreement, providing there has been no default, Korle Bu Medical Group, Ltd. (Lessee) may purchase certain equipment as further described on the schedule attached hereto and made a part hereof, which is the subject matter of this Lease, as is and where is, for $1.00, and make payment thereof within thirty (30) days of the maturity of the Agreement.

In Witness Whereof, Lessor and Lessee have executed this Rider to the Agreement this _3rd_ day of _January_, ~~2005~~. 2006

Lessor
**National Machine Tool
Financial Corporation**

Lessee
**Korle Bu Medical Group, Ltd.**

By _[signature]_

By: _John Acauaye-Avah_

Title _VP_

Title _President_

A PHOTOCOPY OR FACSIMILE SHALL BE DEEMED AN ORIGINAL

# ECOA NOTICE

> **NOTICE:** If your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact our Credit Disclosure Administrator, 80 North Gordon, Elk Grove Village, IL 60007 (847-228-7779) within 60 days from the date you are notified of our decision. We will send you a written statement of reasons for the denial within 30 days of receiving your request. The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20508

## DELIVERY & ACCEPTANCE

**Delivery and
Acceptance Certificate**

By signing below, you, the Lessee, agree:
A) That all equipment described in the lease identified below ("equipment") has been delivered, inspected, installed and is unconditionally and irrevocably accepted by you as satisfactory for all purposes of the lease; and
B) That we, the Lessor named on the front of the Lease identified below, are authorized to purchase the Equipment and start billing you under the lease.

| Lease Number | Customer Number |
|---|---|
| **Lessee Name** Korle Bu Medical Group, Ltd. | |
| **Authorized Signature** *[signature]* | |
| **Title** President | **Date** 1/2/08 |

EXHIBIT B

SALE AND ASSIGNMENT OF LEASE WITHOUT RECOURSE
[EQUIPMENT/MOTOR VEHICLE]

For value received, the undersigned (the "Assignor") sells and assigns to **National City Commercial Capital Corporation** (the "Assignee") and its successors and assigns, without recourse as to the financial ability of the Lessee (**Korle Bu Medical Group, Ltd.**) to pay, all of its interest in the lease (the "Lease") described below, title to the leased property, all rent payments due and to become due under, and proceeds of, the Lease, and all moneys due and to become due in connection with the exercise by the Lessee of an option, if any, to purchase the leased property. The Assignor also grants to Assignee the right, either in the Assignee's own behalf or in the Assignor's name, to take all proceedings, legal, equitable or otherwise.

The Lessee in the Lease and the Lease is dated **February 28, 2006**. At the time of this assignment, the number and amount of payments being assigned are 57 payments at **$1,645.00** (plus applicable taxes) each; the first of which is due to be paid to Assignee on **June 1, 2006**.

For the purpose of inducing the Assignee to enter into this assignment agreement, the Assignor makes the following representations and warranties: (1) The Lease and all options to purchase the property described in the Lease, consents by landlords or other persons, guarantees and notes, if any (all of which documents are collectively called the Lease) are bona fide, for business or commercial use, and comply with all applicable laws and regulations, and all signatures are genuine; (2) All signators were of legal age, competent and authorized to execute the Lease; (3) The property which is the subject of the Lease is accurately described; (4) The Lease was executed in connection with the lease to the Lessee of the property described in the Lease; (5) The property has been accepted by the Lessee; (6) The property is free from all liens and encumbrances, except the lease interest pursuant to the Lease; (7) No payments have been made on account of the Lease except those cash payments indicated in the Lease, and at the date of this assignment there is no event of default by Lessor or Lessee; (8) The Lease is owned solely by the Assignor free from any lien or encumbrance; (9) There are no offsets, counterclaims, or other defenses to the Lease to the Assignor's knowledge; (10) The Assignor has complied with all filing and recording requirements to perfect any security interest it may have in the leased property; and (11) The Assignor has complied with and will continue to comply with and perform all obligations and duties of Lessor pursuant to the Lease. Should any of these representations or warranties be false, or should any claim of breach of warranty be made by the Lessee or its assigns, the Assignor shall immediately pay to the Assignee, on demand, all unpaid assigned rentals, plus all costs, expenses and legal fees incurred by the Assignee.

The Assignor shall have no authority without the Assignee's prior written consent to accept collections, to repossess, to consent to the return of the property or to modify the terms of the Lease. Any moneys or payments that may be received by the Assignor to which the Assignee is entitled by reason of this assignment shall be received by the Assignor as trustee for the Assignee, and will be immediately delivered to the Assignee without commingling with any other funds of the Assignor. The Assignor agrees that the Assignee may audit its books and records relating to the Lease.

The Assignee shall have none of the obligations of Lessor under the Lease.

This assignment shall be construed under Illinois law. None of the terms shall be modified except by a writing signed by the Assignee. Notice of the acceptance of this assignment is waived.

**WAIVER OF JURY TRIAL:** The Assignor and the Assignee, after consulting or having had the opportunity to consult with counsel, knowingly, voluntarily and intentionally waive any right either of them may have to a trial by jury in any litigation based upon or arising out of this assignment or any related instrument or agreement, or any of the transactions contemplated by this assignment, or any course of conduct, dealing, statements (whether oral or written) or actions of either of them. Neither the Assignee nor the Assignor shall seek to consolidate, by counter-claim or otherwise, any action in which a jury trial has been waived with any other action in which a jury trial cannot be or has not been waived. These provisions shall not be deemed to have been modified in any respect or relinquished by either the Assignee or the Assignor except by a written instrument executed by both of them.

Date  5/15 , 2006.                                      Date:  May 4, 2006

Assignee: National City Commercial Capital Corporation   Assignor: National Machine Tool Financial Corporation
By: _Molly Williams_                                    By: _Susan M. Adamatis_
Title: _Team Leader_                                          Susan M. Adamatis
                                                               Title: Vice President

**EXHIBIT C**

**EXHIBIT**

D

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone: (800) 331-3282  Fax: (818) 662-4141

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

512234 INATIONALMACH

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

6966510

ILIL

2005 DEC 16 PM 4:30

UCU112/19/05:06:0278:
20.00 CK01
SOSIL 13:39 10475651 FS

DEC 16 2005

### 1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

1a. ORGANIZATION'S NAME: **KORLE BU MEDICAL GROUP, LTD.**

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2929 SOUTH ELLIS AVE | CHICAGO | IL | 60616 | |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | CORPORATION | IL | 63182001 | ☐ NONE |

### 2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

(blank)

### 3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

3a. ORGANIZATION'S NAME: **NATIONAL CITY COMMERCIAL CAPITAL CORPORATION**

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 995 DALTON AVENUE, SUITE 400 | CINCINNATI | OH | 45203 | |

### 4. This FINANCING STATEMENT covers the following collateral:

One (1) New Zonare z.One Ultrasound Unit including all attachments and accessories.

5. ALTERNATIVE DESIGNATION [if applicable]: ☐ LESSEE/LESSOR  ☐ CONSIGNEE/CONSIGNOR  ☐ BAILEE/BAILOR  ☐ SELLER/BUYER  ☐ AG. LIEN  ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. Attach Addendum [if applicable]  7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE] [optional]  ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA
6966510

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Prepared by UCC Direct Services, P.O. Box 29071, Glendale, CA 91209-9071 Tel: (800) 331-3282