## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

NATIONAL CITY COMMERCIAL CAPITAL )
COMPANY, LLC as successor-by-merger to )
to NATIONAL CITY COMMERCIAL CAPITAL )
CORPORATION, as assignee of NATIONAL )    Case No.:07-cv-06124
MACHINE TOOL FINANCIAL CORP., )
                                )
               Plaintiff, )
  v. )
                                )
KORLE BU MEDICAL GROUP, LTD. )
and DR. JOHN ACQUAYE-AWAH individually, )
                                )
              Defendants. )

## MOTION FOR DEFAULT JUDGMENT

Plaintiff, NATIONAL CITY COMMERCIAL CAPITAL COMPANY, LLC as successor-by-merger to National City Commercial Capital Corporation ("National City"), as assignee of National Machine Tool Financial Corp., by Askounis & Borst, P.C., its attorneys, and for its Motion for Default Judgment against defendants, KORLE BU MEDICAL GROUP, LTD ("Korle Bu") and DR. JOHN ACQUAYE-AWAH, ("Dr. Acquaye-Awah") (collectively, "Defendants") states as follows:

1.     National City filed its initial Complaint on October 30, 2007. [Docket No. 1]

2.     Pursuant to the Court's Order dated November 1, 2007, National City filed its Amended Complaint with amended jurisdictional allegations on November 8, 2007.  A true and correct copy of the Amended Complaint is attached hereto as Exhibit A.

3.     The Summons and Amended Complaint were personally served on Korle Bu's Vice President, Linda Acquaye-Awah on January 17, 2008.  A true and correct copy of the Summons and Affidavit of Service is attached hereto as part of  Exhibit B.

4.     Dr. Acquaye-Awah was personally served with the Summons and Amended Complaint on January 17, 2008. A true and correct copy of the Summons and Affidavit of Service is attached hereto as part of Exhibit C.

5.     No appearance, answer or other responsive pleading has been filed on behalf of Korle Bu as of February 26, 2008. The undersigned counsel's Affidavit attesting to the same is attached hereto as Exhibit D.

6.     No appearance, answer or other responsive pleading has been filed on behalf of Dr. Acquaye-Awah as of February 26, 2008. The undersigned counsel's Affidavit attesting to the same is attached hereto as Exhibit D.

7.     Upon information and belief, Dr. Acquaye-Awah is not in the military services. The undersigned counsel's Affidavit as to Military Service is attached hereto as Exhibit E.

8.     Consequently, National City is entitled to the entry of an order of judgment by default against the Defendants, jointly and severally, for their failure to answer or otherwise appear before this Court pursuant to the Federal Rules of Civil Procedure.

9.     Due to the Defendants' failure to answer the Amended Complaint, the Defendants have admitted all of the salient allegations of the Amended Complaint as they relate to National City's claims, including that valid and enforceable contracts exist between the parties, the breach of the contracts by Defendants, demand for payment, and damages. Korle Bu and Dr. Acquaye-Awah are indebted to National City in the amount of $81,058.39 together with prejudgment interest from the date of default at the statutory rate of 9% per 815 ILCS 205/4(1), plus repossession expenses to be determined. The Affidavit of Tina M. Bowling, Litigation Specialist for National City, attesting to this debt is attached hereto as Exhibit F.

10.    Consequently, National City is entitled to the entry of judgment by default in its favor in the amount of $81,058.39, plus prejudgement interest at the rate of 9%, plus attorneys' fees and costs in the amount of $5,411.61, pursuant to the Affidavit of Jennifer E. Gaylord in Support of Attorneys' Fees, attached hereto as Exhibit G, and Paragraph 17 of the Lease Agreement.

11.    National City is entitled to an order of replevin to in the equipment more particularly described in the Amended Complaint and the Lease Agreement (the "Equipment") and to obtain immediate possession of the same.  See Affidavit of Tina M. Bowling attached hereto as Exhibit F.

WHEREFORE, NATIONAL CITY COMMERCIAL CAPITAL COMPANY, LLC respectfully requests that this Court enter judgment in its favor and against KORLE BU MEDICAL GROUP, LTD and DR. JOHN ACQUAYE-AWAH, jointly and severally, as follows:

a.    Awarding National City damages in the amount of $81,058.39 on National City's breach of contract claim, plus 9% prejudgment interest at the statutory rate from the date of default; and repossession expenses

b.    Directing the Federal Marshal and/or the Cook County Sheriff to use all necessary force to repossess the Equipment, or any part thereof from Korle Bu and Dr. Acquaye-Awah at 5517 S. Michigan Avenue, Chicago, IL 60637, or wherever it may be found, or in the alternative, to enter judgment against Korle Bu and Dr. Acquaye-Awah jointly and severally for the value of the Equipment;

c.    Awarding National City its attorney's fees and costs; and

d.    Awarding National City such other and further relief as this Court deems just.

NATIONAL CITY COMMERCIAL CAPITAL COMPANY, LLC as successor-by-merger to NATIONAL CITY COMMERCIAL CAPITAL CORPORATION, assignee of NATIONAL MACHINE TOOL FINANCIAL CORPORATION

By:    s/ Jennifer E. Gaylord
      Vincent T. Borst, Esq. (ARDC #06192904)
      Jennifer E. Gaylord (ARDC #6284809)
      ASKOUNIS & BORST, P.C.
      Two Prudential Plaza
      180 N. Stetson Street, Suite 3400
      Chicago, Illinois 60601
      (312) 861-7100 Telephone
      (312) 861-0022 Facsimile
      Vtborst@askborst.com
      Jgaylord@askborst.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2008, I electronically filed the foregoing *Motion for Default Judgment* with the Clerk of the Court using the CM/ECF system, and I hereby certify that I have mailed by United States Postal Service the document to the following parties:

> Dr. John Acquaye-Awah
> 9033 Reserve Dr.,
> Willow Springs, IL 60480

> s/ Jennifer E. Gaylord

U:\JGaylord\National City\Korle Bue Medical Group\Pleadings\Motion for Default Docs\Motion for Default Judgment.wpd

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| NATIONAL CITY COMMERCIAL CAPITAL COMPANY, LLC as successor-by-merger to to NATIONAL CITY COMMERCIAL CAPITAL CORPORATION, as assignee of NATIONAL MACHINE TOOL FINANCIAL CORP., | ) ) ) ) ) | Case No.:07-cv-06124 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| KORLE BU MEDICAL GROUP, LTD. and DR. JOHN ACQUAYE-AWAH individually, | ) ) ) | |
| Defendants. | ) | |

**AMENDED VERIFIED COMPLAINT**

Plaintiff, NATIONAL CITY COMMERCIAL CAPITAL COMPANY, LLC as successor-by-merger to National City Commercial Capital Corporation ("National City"), as assignee of National Machine Tool Financial Corp., by Askounis & Borst, P.C., its attorneys, and for its Complaint against defendants, KORLE BU MEDICAL GROUP, LTD ("Korle Bu") and DR. JOHN ACQUAYE-AWAH, ("Dr. Acquaye-Awah") (collectively, "Defendants") states as follows:

**PARTIES**

1.      Plaintiff, National City is an Indiana limited liability company with its principal place of business at 995 Dalton Avenue, Cincinnati, Ohio 45203.

2.      National City Bank, a ninety-nine percent member of National City, is a national banking association with its principal place of business at 1900 E. 9th St., Cleveland, OH 44114.

3.      NCBO Holdings, Inc., a one percent member of National City, is an Indiana corporation with its principal place of business at 1 National City Center, Indianapolis, IN 46255.

4.      Defendant, Korle Bu is an Illinois corporation with its principal place of business at 5517 S. Michigan Avenue, Chicago, IL 60637.



**EXHIBIT**

A

5.    Defendant Dr. Acquaye-Awah a citizen of Illinois residing at 9033 Reserve Drive, Willow Springs, IL 60480.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

7.    Venue is appropriate in this Court pursuant to 28 U.S.C §1391 because Korle Bu is incorporated in and Dr. Acquaye-Awah is a citizen of Illinois and because a substantial part of the events giving rise to National City's claims occurred in this District.

## BACKGROUND

8.    On or about February 28, 2006, Korle Bu and National Machine Tool Financial Corporation ("Machine Tool"), a non-party, entered into Lease Agreement 65573000 (the "Lease"). A true and correct copy of the Lease is attached hereto as Exhibit A.

9.    In order to induce Machine Tool to enter into the Lease, Dr. Acquaye-Awah personally guaranteed all obligations under the Lease. A true and correct copy of the "Guaranty" is attached hereto as part of Exhibit A.

10.    Pursuant to the Lease, Machine Tool purchased the following equipment: One (1) new Zonare Z.One Ultrasound Unit, S/N 1156S105L, including all attachments and accessories (the "Equipment") and subsequently leased the Equipment to Korle Bu.

11.    The Equipment was delivered and accepted by Korle Bu on or about January 2, 2006. A true and correct copy of the Delivery and Acceptance Notice is attached hereto as Exhibit B.

12.     On or about May 15, 2006, Machine Tool assigned all of its right, title and interest in the Lease to National City. A true and correct copy of the Sale and Assignment of Lease Without Recourse is attached hereto as Exhibit C.

13.     In order to secure payments under the Lease, Korle Bu granted Machine Tool a continuing first priority security interest in the Equipment, which was subsequently assigned to National City. A true and correct copy of the UCC Financing Statement is attached hereto as Exhibit D.

14.     Pursuant to the terms of the Lease, Korle Bu agreed to make sixty (60) consecutive monthly payments of $1,788.94 each.

15.     Korle Bu defaulted under the terms of the Lease by failing and refusing to make the monthly payments when due.

16.     Paragraph 17 of the Lease Agreement provides, in pertinent part, as follows:

The occurrence of any one of the following events will constitute a default by lessee hereunder ("event of default") (i) failure to pay or perform any of lessee's obligations under this lease within ten (10) days from the due date of payment or performance.

Upon an event of default, lessor may, at its election and without notice or demand, exercise any one or more of the following remedies in order to protect the interest and reasonably expected profits and bargains of lessor: (i) upon notice to lessee terminate this lease and all lease schedules executed pursuant thereto; (ii) the occurrence of any event of default or any time thereafter, or if lessor decides, in its sole discretion, not to take possession of the equipment, lessor continues to be the owner of the equipment and may, but is not obligated to, dispose of the equipment by sale or otherwise, all of which determinations may be made by lessor in its absolute discretion and for its own account; (iii) declare immediately due and payable all sums due and to become due hereunder for the full term of the lease (including any renewal or purchase options which lessee has contracted to pay).

See Lease attached hereto as Exhibit A.

17.     The Guaranty of Dr. Acquaye-Awah provides as follows:

The undersigned ("Guarantor") consents to the terms and conditions of the above Lease and unconditionally and irrevocably assures and guarantees to Lessor full and timely performance and observance of all duties and obligations of Lessee under the above Lease, including without limitations prompt payments when due, whether by acceleration or otherwise, of Lease Payments, Renewal Payments, reasonable attorney's fees, costs and expenses of collection incurred by Lessor in enforcing Lessee's duties and obligations under the above Lease and all other amounts due under the Lease. In addition, Guarantor shall be liable for reasonable attorney's fees, costs and expenses of collection incurred by Lessor in enforcing Guarantor's obligations under this Guaranty.

See Guaranty attached hereto as part of Exhibit A.

18.     As of the filing of this Complaint, the total balance due under the Lease is $81,058.39.

19.     National City has performed all of its obligations under the Lease.

20.     National City has demanded all monies due and owing from Korle Bu under the Lease and from Dr. Acquaye-Awah as a result of his Guaranty, but those amounts remain unpaid to date.

## COUNT I
## BREACH OF CONTRACT

21.     National City realleges and reasserts paragraphs 1 through 20 of its Complaint as though fully set forth herein as paragraph 21 of its Complaint.

22.     As a result of Korle Bu's default under the Lease, National City is entitled to damages for Korle Bu's breach of contract in the amount of $81,058.39, plus interest thereon from the date of default in accordance with the terms of the Lease.

## COUNT II
## BREACH OF GUARANTY

23.     National City realleges and reasserts paragraphs 1 through 22 of its Complaint as though fully set forth herein as paragraph 23 of its Complaint.

24. As a result of Korle Bu's default under the Lease, National City is entitled to damages from Dr. Acquaye-Awah under the terms of his Guaranty in the amount of $81,058.39, plus interest thereon from the date of default in accordance with the terms of the Lease.

**COUNT III**
**REPLEVIN**

25. National City realleges and reasserts paragraphs 1 through 24 as though fully set forth herein as paragraph 25 of its Complaint.

26. As a result of Korle Bu's default under the Lease, National City is entitled to possession of the Equipment in accordance with the terms of the Lease.

27. National City has made written demand upon Korle Bu and Dr. Acquaye-Awah for return of the Equipment.

28. Korle Bu is wrongfully in possession and control of the Equipment.

29. Upon information and belief, the value of the Equipment is $10,000.00.

30. National City has been unable to secure possession of its Equipment through peaceful means, and therefore claims the immediate return of the Equipment, or the reasonable value of any Equipment not returned pursuant to any order entered by this Court.

31. The Equipment has not been taken for any tax, assessment or fine levy by virtue of the law of any state against property of National City, or against National City individually, nor seized under any lawful process against the goods and chattels of National City subject to such lawful process nor held by virtue of any order of replevin against National City.

WHEREFORE, NATIONAL CITY COMMERCIAL CAPITAL COMPANY, LLC

respectfully requests that this Court enter judgment in its favor and against KORLE BU MEDICAL

GROUP, LTD and DR. JOHN ACQUAYE-AWAH, jointly and severally, as follows:

a.   Awarding National City damages in the amount of $81,058.39 on National City's breach of contract claim, plus interest thereon from the date of default;

b.   Directing the Federal Marshal and/or the Cook County Sheriff to use all necessary force to repossess the Equipment, or any part thereof from Korle Bu and Dr. Acquaye-Awah at 5517 S. Michigan Avenue, Chicago, IL 60637, or wherever it may be found, or in the alternative, to enter judgment against Korle Bu and Dr. Acquaye-Awah jointly and severally for the value of the Equipment;

c.   Awarding National City its attorney's fees and costs; and

d.   Awarding National City such other and further relief as this Court deems just.

NATIONAL CITY COMMERCIAL CAPITAL
COMPANY, LLC as successor-by-merger to
NATIONAL CITY COMMERCIAL CAPITAL
CORPORATION, assignee of NATIONAL
MACHINE TOOL FINANCIAL CORPORATION

By:   s/ Vincent T. Borst
      Vincent T. Borst, Esq. (ARDC #06192904)
      Jennifer E. Gaylord (ARDC #6284809)
      ASKOUNIS & BORST, P.C.
      Two Prudential Plaza
      180 N. Stetson Street, Suite 3400
      Chicago, Illinois 60601
      (312) 861-7100 Telephone
      (312) 861-0022 Facsimile
      Vtborst@askborst.com
      Jgaylord@askborst.com

U:\JGaylord\National City\Korle Bue Medical Group\Amended Complaint.wpd

**EXHIBIT**

**A**

# National Machine Tool Financial Corporation

**Lease Agreement**

| Commitment Date | | LEASE AGREEMENT NO. |
|---|---|---|
| Lease Commencement Date 1/21/06 | | 65573000 |

| | FULL LEGAL NAME OF LESSEE | TAXPAYER ID# (TIN) | NAME OF EQUIPMENT VENDOR/SUPPLIER. |
|---|---|---|---|
| **Lessee** | Korle Bu Medical Group, Ltd. | 841633320 | Zonare |
| | BILLING ADDRESS: 2929 South Ellis Ave, Chicago, IL 60616 | | 1051 Terra Bella Ave, Mountainveiw, CA 94043 |
| | CONTACT: Dr. John Awah | PHONE #: 312-791-2943 | CONTACT: Keith Rubenstein | PHONE # 773-294-5030 |

| | QUANTITY | MAKE | | MODEL, FEATURES AND SERIAL NUMBERS |
|---|---|---|---|---|
| **Equipment Description and Location** | | | See Addendum A | |

EQUIPMENT LOCATION (If Different Than Billing Address): 3055 S. Cottage Grove    ADDITIONAL PROVISIONS:

STREET  CITY  COUNTY  STATE  ZIP CODE  Chicago, IL 60616

| | INITIAL TERM (Months) | PAYMENT FREQUENCY | TOTAL NUMBER OF PAYMENTS | AMOUNT OF EACH LEASE PAYMENT + | SALES/USE TAX = | TOTAL PAYMENT |
|---|---|---|---|---|---|---|
| **Payment Terms** | 60 | Monthly | 60 | $1,645.00 | $143.94 | $1,788.94 |

| | FIRST PAYMENT + | LAST PAYMENT (S) $ | SECURITY DEPOSIT + | PROCESSING FEE = | TOTAL ADVANCE PAYMENT (Enclose Check for this Amount) |
|---|---|---|---|---|---|
| **Advance Payment** | $0.00 | $0.00 | | $ 0.00 | $ |

**TERMS AND CONDITIONS    THIS IS A NON-CANCELABLE LEASE — PLEASE READ CAREFULLY**

Lessor and lessee, INTENDING TO BE LEGALLY BOUND, hereby agree as follows:

1. **LEASE.** Subject to the terms and conditions hereof, lessor hereby leases to lessee and lessee hereby leases from lessor the personal property described above, or if separately scheduled, in the schedule annexed hereto and made a part hereof, together with all replacements thereof and parts, repairs, improvements, additions, accessions and accessories now or hereafter incorporated therein and/or affixed thereto (all of the aforesaid personal property and other terms being individually and collectively referred to as the "equipment". Lessee hereby authorizes lessor and appoints lessor as its attorney in fact to insert in this lease the serial numbers and other identification data pertaining to the equipment when the same is/are determined by lessor.

2. **TERM** The term ("term") of this lease commences upon the date on which lessor accepts this agreement, and ends upon the expiration of the number of months specified above as "number of payments" after the "lease commencement date" provided below. Lessee hereby authorizes lessor and appoints lessor as its attorney in fact to insert in this lease the "lease commencement date; the date upon which the equipment is delivered to and accepted by lessee or any later date selected by lessee. Lessee further authorizes lessor and appoints lessor as its attorney in fact to insert in this lease any additional information necessary to complete the lease and, in furtherance of such authorization, to complete any blank space in the lease with the appropriate information and such additional information shall become part of this lease.

3. **LEASE PAYMENTS.** During the term of this lease and without deduction, reduction, set off or counterclaim, lessee shall pay lease payments ("lease payments") in advance in such amounts (based upon the "amount of each monthly lease payment" and applicable sales tax) and at such intervals as stated above. The first lease payment shall be due and payable on the date set forth as the "payment commencement date" Subsequent lease payments shall be due and payable in advance for the term, at the frequency and in the amount stated above. Lease payments shall be due and payable whether or not lessee has received any notice that such payments are due. All lease payments shall be paid to lessor at its address set forth above or as otherwise directed by lessor in writing. No portion of any lease payment shall be deemed to constitute payment for any equity interest in the equipment. In no event shall any advance lease payment or other amounts paid by lessee in advance pursuant to this lease or otherwise bear interest.

4. **NO WARRANTIES BY LESSOR OR ASSIGNEE OF LESSOR.** Lessee acknowledges that it has selected both (a) the equipment and (b) the supplier from whom lessor is to purchase said equipment. In this respect, lessee acknowledges that lessor is neither the manufacturer of said equipment nor the agent of said manufacturer. Lessee further acknowledges that lessor has not made and does not make any warranty or representation, either expressed or implied, of any kind whatsoever with respect to the equipment, including, but not limited to: (a) the fitness, design or condition of the equipment; (b) the merchantability of the equipment or its fitness for any particular purpose; (c) the quality or capacity of the equipment, the materials in the equipment, or workmanship in the equipment; (d) any latent defects in the equipment; (e) any patent, copyright, or trade secret infringement; and (f) as to the compliance of the equipment with any requirements of any law, rule, specification, or contract pertaining thereto. Lessee further acknowledges that it is leasing said equipment from lessor in an "as is" condition and that no defect or unfitness of the equipment shall relieve lessee of lessee's obligation to pay the lease payments or any other obligation lessee may have to lessor under the terms of this lease. It is agreed that lessor shall have no obligation to install, erect, test, adjust, repair or service the aforesaid equipment. The parties agree that this lease is a "finance lease" as defined by section 2a-103(a) of the uniform commercial code (ucc). Lessee acknowledges either (a) that lessee has reviewed and approved a written supply contract covering the equipment purchased from the "supplier" thereof for lease to lessee, or (b) that lessor has informed or advised lessee, in writing, of the following: (i) the identity of the supplier, (ii) that the lessee may have rights under the supply contract; and (iii) that the lessee may contact the supplier for a description of any such rights lessee may have under the supply contract. Lessor shall not be liable to lessee for any loss, damage or expense of any kind or nature caused, directly or indirectly, by any equipment leased hereunder or the use or maintenance thereof or the failure of same.

5. **RENEWAL** Unless lessee, within sixty (60) days prior to the expiration of this lease, notifies lessor in writing of its intention to return the equipment upon the expiration date, then this lease shall automatically be extended upon all of the terms and conditions herein on a month to month lease basis until such time as written notice is received by lessor

6. **TERMINATION BY LESSOR.** Lessor shall have the exclusive option to terminate this lease and lessor's obligations hereunder, if within ninety (90) days after the commitment date, the equipment has not been delivered to lessee, or lessee has not accepted the equipment as provided in paragraph 11 hereof. The aforesaid option of lessor to terminate this lease may be exercised by giving written notice of termination pursuant to this paragraph at any time within sixty (60) business days after expiration of the aforesaid ninety (90) day period.

7. **NO CANCELLATION BY LESSEE** This lease may not be canceled or terminated under any circumstances by lessee

8. **Use.** The equipment shall be used exclusively for agricultural, business or other commercial purposes and should not be used at any time during the initial term of lease or any renewal term for personal, family or household purposes. In addition, the equipment shall be used according to accepted standards of use for the equipment in the industry or trade in which it is customarily used.

9. **SUPPLIER NOT AN AGENT.** Neither supplier, nor any salesman, employee or other agent of supplier is an agent of lessor. Neither supplier, nor any salesman, employee or agent of supplier is authorized to waive or alter any term or condition of this lease and no representation as to the equipment or any other matter by supplier or any salesman, employee or other agent of supplier shall in any way affect lessee's duty to pay the lease payments or perform its other obligations as set forth in this lease.

10. **SELECTION AND ORDERING OF EQUIPMENT.** Lessee has selected both the equipment and supplier named above from whom lessor is herein requested by the lessee to purchase the equipment in order to lease the same to lessee in accordance with this lease. Lessee acknowledges that the equipment that it has selected is suitable for the purposes of its intended use. Lessee further acknowledges that this selection was not made pursuant to or in reliance upon the judgment, recommendations or representations of lessor.

11. **DELIVERY AND INSPECTION.** Lessee shall inspect the equipment within forty-eight (48) hours after it is delivered to lessee. Unless within such forty-eight (48) hour period lessor receives written notice from lessee specifying any proper objection to the equipment, it shall be conclusively presumed, as between lessor and lessee that: (a) lessee has fully inspected the equipment; (b) the equipment is in full compliance with the terms and conditions of this lease, (c) the equipment is in good condition and repair; and (d) lessee has accepted the equipment. If lessor shall request, lessee shall promptly furnish lessor with a written statement setting forth the matters set forth in (a), (b), (c) and (d) of this paragraph and also approving the payment of the invoice pertaining to the equipment or a portion thereof.

12. **OWNERSHIP; LANDLORD'S WAIVER.** The equipment is, and shall at all times remain, the property of lessor and lessee shall have no right, title or interest therein or thereto except as expressly set forth in this lease. Lessor is hereby authorized by lessee, at lessee's expense, to cause this lease, or any statement or other instrument relating to this lease showing an interest of lessor in the equipment, to be filed or recorded any so-recorded. Lessee agrees to execute and deliver any statement or instrument requested by lessor for such purpose. The equipment is, and shall at all times be and remain personal property notwithstanding that the equipment, or any part thereof, may now be, or hereafter become, in any manner affixed or attached to any real property or any building thereon. Immediately upon demand by lessor, lessee shall procure, for the benefit of lessor, and deliver to lessor landlord and mortgage waivers, duly executed by the appropriate parties, pertaining to the equipment in form and substance satisfactory to lessor and in the event that lessee refuses or is unable to procure and deliver the aforesaid waivers, lessor shall have the right to suspend, terminate or cancel this lease, in whole or in part, without any liability therefor, by giving notice to lessee of such suspension, termination or cancellation, and, in addition, lessor shall have the right to declare a default under this lease and to exercise all rights and remedies of which lessor is possessed pursuant to this lease or otherwise by law or equity.

13. **LOCATION; LESSOR'S INSPECTION; LABELS.** The equipment shall be delivered to and thereafter kept at the location specified on the reverse side hereof and shall not be removed therefrom without lessor's prior written consent. Lessor shall have the right to inspect the equipment at any time without prior notice. If lessor supplies lessee with labels which state that the equipment is owned by lessor, lessee shall affix and keep same in a prominent place on each item of equipment.

14. **REPAIRS, USE; ALTERATIONS.** Lessee, at its own expense, shall keep the equipment in good working condition and repair and, at its own expense, furnish all labor, parts, mechanisms and devices required therefore. Lessee shall use the equipment in a careful and lawful manner. Lessee shall not make any alterations, additions or improvements to the equipment without lessor's prior written consent. All replacement of the equipment and parts, repairs, improvements, additions, accessions and accessories made to the equipment shall immediately become a component part thereof and title thereto shall be immediately vested in lessor and shall be included under the terms and conditions hereof.

15. **INSURANCE.** During the term of this lease, you will purchase and maintain, at your expense, a property insurance policy insuring the equipment against all risk of loss or damage in an amount not less than the replacement cost of the equipment. You will also purchase and maintain for the term of this lease, commercial general liability insurance in an amount not less than $1,000,000 per an occurrence for bodily injury and property damage liability. The policy of insurance covering the equipment will include a lender's loss payable endorsement naming national machine tool financial corporation as sole loss payee. You will provided evidence of the insurance by sending an evidence of property insurance to national machine tool financial corporation. The commercial general liability policy will be endorsed to include national machine tool financial corporation as an additional insured, and will provide primary commercial general liability coverage for the leased equipment. You will provide evidence of this insurance by sending a certificate of insurance to national machine tool financial corporation. The insurance policy insuring the equipment and the commercial general liability policy will be endorsed to provide 30 days prior written notice of cancellation or non-renewal to national machine tool financial corporation, 80 north gordon, elk grove village, il 60007, attn: insurance department. Lessee hereby assigns to lessor all its right, title and interest in and to any proceeds of such insurance.

16. **LIENS, TAXES.** Lessee shall keep the equipment free and clear of all levies, liens, security interests and other encumbrances of any nature. In addition, lessee shall: (a) make and file all declarations and returns in connection with all charges and taxes (local, state and federal), which may now or hereafter be imposed upon or measured by the ownership, leasing, lease, sale, purchase, possession or use of the equipment excluding however all taxes on or measured by lessor's net income; and (b) pay all such charges and taxes when the same become due. In the event that lessor shall elect to make and file any declarations or returns in connection with such charges and taxes or to pay the same, then lessee shall reimburse lessor, immediately upon demand of lessor, for any and all such charges and taxes applicable to the equipment.

17. **DEFAULT AND REMEDIES.** (a) the occurrence of any one of the following events will constitute a default by lessee hereunder ("event of default"): (i) failure to pay or perform any of lessee's obligations under this lease within ten (10)days from the due date of payment or performance; (ii) material misrepresentation; (iii) failure to protect the equipment or lessor's ownership rights in same; or (iv) the filing of voluntary bankruptcy petition by or against lessee. Upon an event of default, lessor may, at its election and without notice or demand, exercise any one or more of the following remedies in order to protect the interest and reasonably expected profits and bargain of lessor: (i) upon notice to lessee terminate this lease and all lease schedules executed pursuant thereto; (ii) the occurrence of any event of default or any time thereafter, or if lessor decides, in its sole discretion, not to take possession of the equipment, lessor continues to be the owner of the equipment and may, but is not obligated to, dispose of the equipment by sale or otherwise, all of which determinations may be made by lessor in its absolute discretion and for its own account; (iii) declare immediately

due and payable all sums due and to become due hereunder for the full term of the lease (including any renewal or purchase options which lessee has contracted to pay); (iv) with or without terminating this lease, recover from lessee damages, not as a penalty, but herein liquidated for all purposes and in an amount equal to the sum of: (a) any accrued and unpaid lease payments as of the date of entry of judgment in favor of lessor plus late charges and all other sums that may accrue hereunder; (b) the present value of all future lease payments reserved in the lease and contracted to be paid over the lease discounted at a rate equal to the discount rate of the federal reserve bank of philadelphia as of the date of entry of judgment in favor of lessor plus one percent (1%), (c) all commercially reasonable costs and expenses incurred by lessor in any repossession, recovery, storage, repair, sale, release or other disposition of the equipment including reasonable attorneys' fees of twenty percent (20%) but in no event less than five hundred dollars ($500.00), and costs incurred in connection therewith or otherwise resulting from lessee's default (inclusive of attorneys' fees, fees of collection agencies, and other costs incurred in the collection of the balance due), (d)estimated residual value of the equipment as of the expiration of this lease or any determinable, (c) no right or remedy herein conferred upon or reserved to lessor is exclusive of any right or remedy herein or by law or equity provided or permitted, but each shall be cumulative of every other right or remedy herein or by law or equity provided or permitted, given hereunder or now or hereafter existing at law or in equity or by statute or otherwise, and may be enforced concurrently therewith from time to time.

**18.** LESSEE'S WAIVERS. To the extent permitted by applicable law, lessee hereby waives any and all rights and remedies conferred upon a lessee by sections 2a-508 through 2a-522 of the ucc, including, but not limited to lessee's rights to (a) cancel this lease, (b) repudiate this lease, (c) reject the equipment; (d) revoke acceptance of the equipment; (e) recover damages from lessor for any breaches of warranty or for any other reason; (f) a security interest in the equipment in lessee's possession or control for any reason; (g) deduct all or part of any claimed damages resulting from lessor's default, if any, under this lease, (h) accept partial delivery of the equipment; (i) "cover" by making any purchase or lease of or contract to purchase or lease equipment in substitution for those items due from lessor; (j) recover any general, special, incidental or consequential damages, for any reason whatsoever; (k) specific performance, replevin, detinue, sequestration, claim and delivery of the like for any equipment identified to this lease. To the extent permitted by applicable law, lessee also hereby waives any rights now or hereafter conferred by statute or otherwise which may require lessor to sell, lease or otherwise use any equipment in mitigation of lessor's damages as set forth in paragraph 17 which may otherwise limit or modify any of lessor's rights or remedies under paragraph 17. Any action by lessee against lessor for any default by lessor under this lease, including breach of warranty or indemnity, shall be commenced within one (1) year after any such cause of action occurs.

**19.** INDEMNITY. Lessee hereby warrants and covenants that lessee shall indemnify and hold lessor harmless of and from any and all liability, loss, damage, cost and expense, including but not limited to reasonable attorneys' fees, arising out of or otherwise pertaining in any way to the equipment, this lease or any injury to persons or property of any nature resulting from, pertaining to or based upon the actual or alleged manufacture, selection, purchase, sale, ownership, lease, delivery, possession, transportation, use or operation of the equipment or its location or condition, or any other interest of lessee in the equipment or this lease or any activity, forbearance or omission by lessor with respect to the equipment or this lease. In addition, lessee, immediately upon demand by lessor, shall satisfy, pay and discharge any and all judgments and fines which may be assessed or recovered against lessor in any action pertaining to any of the aforesaid.

**20.** LOSS OR DAMAGE. Lessee shall bear the entire risk of loss, theft, destruction, or damage of equipment or any portion thereof from any cause whatsoever. The liability of lessee to pay lease payments thereof may be discharged by paying the lessor a "casualty loss payment" which shall be a payment in an amount equal to the total of the following: (a) any accrued and unpaid lease payments as of the date of receipt of such payment by lessor plus late charges and all other sums that may accrue thereunder; (b) the present value of all future lease payments reserved in the lease and contracted to be paid over the unexpired term of the lease discounted at a rate equal to the discount rate of the federal reserve bank of philadelphia as of the date of receipt of such payment by lessor plus one percent (1%); (c) all commercially reasonable costs and expenses incurred by lessor in any repossession, recovery, storage, repair, sale, re-lease, or other disposition of the equipment including attorneys' fees of twenty percent (20%) but in no event less than five hundred dollars ($500.00) and costs incurred in connection therewith or otherwise resulting from lessee's default (inclusive of attorneys' fees, fees of collection agencies, and other costs incurred in the collection of the balance due), (d) estimated residual value of the equipment as of the expiration of this lease or any renewal thereof (if such lease has been renewed); and (e) any indemnity, if then determinable. Except as provided in the preceding sentence, the total or partial destruction of any equipment, or total or partial loss of use or possession thereof by lessee, shall not release or relieve lessee from the duty to pay the discount rate of the future lease payments herein provided for.

**21.** SURRENDER. At the expiration of other termination of this lease or upon demand by lessor following a default, lessee, at its own expense, shall immediately return the equipment in as good condition as received less normal wear and tear, by delivering it packed and ready for shipment, to such place or on board such carrier as lessor may require.

**22.** Service charge and interest. If lessee fails to pay when due any lease payment, renewal lease payment, additional lease payment or other amount required herein to be paid to lessor, and in order to defray the additional costs incurred by lessor, lessee or guarantor shall pay to lessor a service charge of seven and one-half percent (7.5%) of such amount or part thereof which shall be delinquent, or fifteen dollars ($15.00), whichever is greater, plus interest on such delinquent amount over the minimum service charge at eighteen percent (18%) per annum or the maximum rate allowable by law.

**23.** NOTICES. Service of all notices under this lease shall be sufficient if given personally or mailed to the party rendered at its respective address set forth above, or at such other address as said party may provide in writing to the other from time to time. Any such notice mailed to said address shall be effective when deposited in the united state mail, duly addressed and with postage prepaid.

**24.** Security deposit. When this lease provides for a security deposit, lessor may, but shall not be obligated to, apply the security deposit to cure any default, in which event lessee shall promptly restore in full the security deposit. Upon termination of this lease and all renewals hereof and all equipment schedule(s), if lessee has fulfilled all the terms and conditions hereof and no default shall have occurred, lessor shall return to lessee any remaining balance of the security deposit. No security deposit shall earn interest.

**25** ASSIGNMENT. Without lessor's prior written consent, lessee shall not (a) assign, transfer, pledge, hypothecate or otherwise dispose of this lease, the equipment, or any interest therein, or (b) sublet or lend the equipment or permit it to be used by anyone other than lessee or lessee's employees. Lessor may assign, grant a security interest in, or otherwise transfer this lease or the equipment, in whole or in part, without notice to lessee. Each such assignee, transferee, secured party or other transferee shall have all of the rights, but none of the obligations, if any, of lessor under this lease. Lessee shall not assert against any assignee, transferee, secured party or other transferee of lessor any defense, counterclaim or offset that lessee may have against lessor. Subject to the foregoing, this lease is binding upon the heirs, personal representatives, successors and assigns of the parties hereto

**26** Severability. If any provision of this lease or the application thereof to any party or circumstance is held invalid or unenforceable, the remainder of this lease and the application of such provision to other parties or circumstances shall not be affected thereby and to this end the provisions of this lease are declared severable

**27** NO ORAL AGREEMENT. All prior conversations, agreements and representations relating to this lease or to the equipment are integrated herein. None of the terms or conditions of this lease shall be changed or modified except in writing duly executed by both lessor and lessee.

**28.** CAPTIONS. The captions or headings of each paragraph of this lease do not constitute part of this lease, but are for informational purposes only.

**28.** ADDITIONAL DOCUMENTS. Lessee authorizes lessor as its attorney-in-fact to execute on behalf of lessee and to file such financing statements and continuation statements with respect to this lease and the equipment as lessor shall deem necessary. In addition, upon demand, lessee shall cause to be executed on its behalf and delivered to lessor from time to time any and all documents necessary or desirable to establish or give notice of the interest of lessor in the equipment or this lease, and the filing costs thereof shall be the obligation of lessee and lessee shall pay the same to lessor as additional lease payments upon demand. The parties intend this transaction to be a true lease, but if any court or tribunal, having power to bind the parties, should conclude that all or part of this transaction is not a true lease but is in the nature of a sale, consignment or other transaction, the parties intend and the lessee hereby grants a continuing security interest in the equipment from the date of this lease to secure the payment of all lessee's indebtedness to lessor. In the event that lessee shall fail or refuse to properly execute and deliver to lessor such documents, lessor, in addition to all other rights and remedies provided in this lease or otherwise by law or equity permitted, is irrevocably as its attorney-in-fact authorized by lessee, but under no duty, to execute lessee's name on any such documents. Such failure or refusal by lessee to execute or deliver documents as aforesaid, regardless of whether lessor shall exercise its aforesaid right to execute lessee's name, shall be deemed a default hereunder.

**30.** LAW AND JURISDICTION. This lease shall be governed by and construed in accordance with the laws of the state of Illinois. Lessee agrees that any actions or proceeding to which lessor is a party arising directly or indirectly from this lease, shall be litigated, at lessor's option, in any state or federal court having situs within the state of Illinois, and that said court shall have jurisdiction thereof.

**31.** Processing fees. Lessee agrees to pay lessor's expenses and any fees incurred in the processing of this transaction and in the investigation of the credit worthiness of lessee and guarantor(s), if any.

**32** MISCELLANEOUS. All provisions of this lease are material and any default hereunder by lessee or guarantor is material and substantial. Time is of the essence. No provision of this lease may be waived except by the written consent of lessor. Lessor or guarantor shall provide lessor with such corporate resolutions, opinions of counsel, financial statements and other documents as lessor shall reasonably request from time to time if more than one lessee is named in this lease, the liability of each shall be joint and several. All financial data submitted to lessor is hereby acknowledged and affirmed as true and correct copies of the signed originals.

**33** FACSIMILE DOCUMENTS. Lessee and lessor intend and agree that a photocopy or facsimile of this lease which includes a photocopy or facsimile of lessee's and lessor's signatures shall be treated as an original and shall be valid, authentic, and legally binding as the original-signature lease for all purposes, and shall be admissible in court as evidence of this transaction but shall not be considered chattel paper as defined by the ucc.

**34.** WAIVER OF JURY TRIAL. Lessor and lessee both waive the right to trial by jury for any claim or action arising out of or relating to the lease or the equipment.

---

**ACCEPTED**

| LESSOR: | LESSEE: Korie Bio Medical Group, Ltd. |
|---|---|
| NATIONAL MACHINE TOOL FINANCIAL CORPORATION | SIGNATURE: _____ |
| 82 N. Gordon St., Elk Grove Village, IL 60007 | |
| Phone:800-865-7627 • FAX: 847-228-7789 | PLEASE PRINT NAME: John ACQUAYE AWAH |
| BY: _Susan A. Allaneta_ | TITLE: President |
| TITLE: _Vice President_ | |
| DATE: 2-28-06 | DATE: 1/3/06 |

---

**GUARANTY**

**INTENDING TO BE LEGALLY BOUND HEREBY,** the undersigned ("Guarantor") consents to the terms and conditions of the above Lease and unconditionally and irrevocably assures and guarantees to Lessor full and timely performance and observance of all duties and obligations of Lessee under the above Lease, including without limitation prompt payment when due, whether by acceleration or otherwise, of Lease Payments, Renewal Payments, reasonable attorney's fees, costs and expenses of collection incurred by Lessor in enforcing Lessee's duties and obligations under the above Lease and all other amounts due under the Lease. In addition, Guarantor shall be liable for reasonable attorney's fees, costs and expenses of collection incurred by Lessor in enforcing Guarantor's obligations under this Guaranty.
Guarantor waives all notices of any character whatsoever with respect to and consent to the taking of, or failure to take, from time to time and without notice to Guarantor, any action of any nature whatsoever with respect to the above Lease, including without limitation any and all Defaults, arrangements, renewals, extensions, modifications, postponements, compromises, indulgences, waivers, surrenders, exchanges and releases and Guarantor shall remain fully liable herein notwithstanding the foregoing.
If any provision hereof is invalid or unenforceable, the remainder hereof shall not be affected thereby and to this end the provisions hereof are declared severable. In the event that more than one person executes this Guaranty, each such person shall be jointly and severally liable hereunder. Any action or proceeding to which Guarantor is a party arising directly or indirectly from this Guaranty shall be litigated in any state or federal court having its situs within COOK COUNTY, ILLINOIS and Guarantor consents to the jurisdiction of such state and federal courts. This Guaranty shall be governed by and construed in accordance with the laws of COOK COUNTY, ILLINOIS.

GUARANTOR(Signature): _____   WITNESS: _J. A. Awah_   DATED: 8/8/06
Printed Name: _John Awah_

GUARANTOR(Signature): _____   WITNESS: _____   DATED: _____
Printed Name: _____

---

| LEASE AGREEMENT# | DATED 2-28-06 | PAYMENT COMMENCEMENT DATE 3-1-06 |
|---|---|---|

# NATIONAL MACHINE TOOL FINANCIAL CORPORATION

## ADDENDUM A
### Page 1 of 1

This Addendum A is attached to and made part of lease agreement dated __1/2/06__ ,2005, between National Machine Tool Financial Corporation, as Lessor and Korle Bu Medical Group, Ltd., as Lessee.

| Quantity | Description | Serial Number |
|---|---|---|
| 1 | One (1) New Zonare z.One Ultrasound Unit , SN 1156S105L including all attachments and accessories | |

Korle Bu Medical Group, Ltd.

By: John ACQUAYE-AWAH

Title: President

## Rider to Lease Agreement

### By and Between
### National Machine Tool Financial Corporation

### And

### Korle Bu Medical Group, Ltd.

Anything in the Agreement to the contrary notwithstanding this paragraph and addendum shall take precedence and shall be binding:

At maturity of the Agreement, providing there has been no default, Korle Bu Medical Group, Ltd. (Lessee) may purchase certain equipment as further described on the schedule attached hereto and made a part hereof, which is the subject matter of this Lease, as is and where is, for $1.00, and make payment thereof within thirty (30) days of the maturity of the Agreement.

In Witness Whereof, Lessor and Lessee have executed this Rider to the Agreement this _3rd_ day of _January_ , 2005. _2006_

Lessor
**National Machine Tool
Financial Corporation**

Lessee
**Korle Bu Medical Group, Ltd.**

By _Susan M Adonoto_

By: _John Acauaye-Avah_

Title _VP_

Title _President_

A PHOTOCOPY OR FACSIMILE SHALL BE DEEMED AN ORIGINAL

# ECOA NOTICE

**NOTICE:** If your application for business credit is denied, you have the right to a written statement of the specific reasons for the denial. To obtain the statement, please contact our Credit Disclosure Administrator, 80 North Gordon, Elk Grove Village, IL 60007 (847-228-7779) within 60 days from the date you are notified of our decision. We will send you a written statement of reasons for the denial within 30 days of receiving your request. The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color religion, national origin, sex, marital status, age (provided the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the consumer Credit Protection Act. The federal agency that administers compliance with this law concerning this creditor is the Federal Trade Commission, Equal Credit Opportunity, Washington, D.C. 20508

# DELIVERY & ACCEPTANCE

**Delivery and
Acceptance Certificate**

By signing below, you, the Lessee, agree:
A) That all equipment described in the lease identified below ("equipment") has been delivered, inspected, installed and is unconditionally and irrevocably accepted by you as satisfactory for all purposes of the lease; and
B) That we, the Lessor named on the front of the Lease identified below, are authorized to purchase the Equipment and start billing you under the lease.

| Lease Number | Customer Number |
|---|---|
| **Lessee Name** <br> Korle Bu Medical Group, Ltd. | |
| **Authorized Signature** <br> _Aeppe-Awal_ | |
| **Title** <br> President | **Date** <br> 1/2/08 |

**EXHIBIT**

B

**SALE AND ASSIGNMENT OF LEASE WITHOUT RECOURSE
[EQUIPMENT/MOTOR VEHICLE]**

For value received, the undersigned (the "Assignor") sells and assigns to **National City Commercial Capital Corporation** (the "Assignee") and its successors and assigns, without recourse as to the financial ability of the Lessee (**Korte Bu Medical Group, Ltd.**) to pay, all of its interest in the lease (the "Lease") described below, title to the leased property, all rent payments due and to become due under, and proceeds of, the Lease, and all moneys due and to become due in connection with the exercise by the Lessee of an option, if any, to purchase the leased property. The Assignor also grants to Assignee the right, either in the Assignee's own behalf or in the Assignor's name, to take all proceedings, legal, equitable or otherwise.

The Lessee in the Lease and the Lease is dated February 28, 2006. At the time of this assignment, the number and amount of payments being assigned are 57 payments at $1,645.00 (plus applicable taxes) each; the first of which is due to be paid to Assignee on June 1, 2006.

For the purpose of inducing the Assignee to enter into this assignment agreement, the Assignor makes the following representations and warranties: (1) The Lease and all options to purchase the property described in the Lease, consents by landlords or other persons, guarantees and notes, if any (all of which documents are collectively called the Lease) are bona fide, for business or commercial use, and comply with all applicable laws and regulations, and all signatures are genuine; (2) All signators were of legal age, competent and authorized to execute the Lease; (3) The property which is the subject of the Lease is accurately described; (4) The Lease was executed in connection with the lease to the Lessee of the property described in the Lease; (5) The property has been accepted by the Lessee; (6) The property is free from all liens and encumbrances, except the lease interest pursuant to the Lease; (7) No payments have been made on account of the Lease except those cash payments indicated in the Lease, and at the date of this assignment there is no event of default by Lessor or Lessee; (8) The Lease is owned solely by the Assignor free from any lien or encumbrance; (9) There are no offsets, counterclaims, or other defenses to the Lease to the Assignor's knowledge; (10) The Assignor has complied with all filing and recording requirements to perfect any security interest it may have in the leased property; and (11) The Assignor has complied with and will continue to comply with and perform all obligations and duties of Lessor pursuant to the Lease. Should any of these representations or warranties be false, or should any claim of breach of warranty be made by the Lessee or its assigns, the Assignor shall immediately pay to the Assignee, on demand, all unpaid assigned rentals, plus all costs, expenses and legal fees incurred by the Assignee.

The Assignor shall have no authority without the Assignee's prior written consent to accept collections, to repossess, to consent to the return of the property or to modify the terms of the Lease. Any moneys or payments that may be received by the Assignor to which the Assignee is entitled by reason of this assignment shall be received by the Assignor as trustee for the Assignee, and will be immediately delivered to the Assignee without commingling with any other funds of the Assignor. The Assignor agrees that the Assignee may audit its books and records relating to the Lease.

The Assignee shall have none of the obligations of Lessor under the Lease.

This assignment shall be construed under Illinois law. None of the terms shall be modified except by a writing signed by the Assignee. Notice of the acceptance of this assignment is waived.

**WAIVER OF JURY TRIAL:** The Assignor and the Assignee, after consulting or having had the opportunity to consult with counsel, knowingly, voluntarily and intentionally waive any right either of them may have to a trial by jury in any litigation based upon or arising out of this assignment or any related instrument or agreement, or any of the transactions contemplated by this assignment, or any course of conduct, dealing, statements (whether oral or written) or actions of either of them. Neither the Assignee nor the Assignor shall seek to consolidate, by counter-claim or otherwise, any action in which a jury trial has been waived with any other action in which a jury trial cannot be or has not been waived. These provisions shall not be deemed to have been modified in any respect or relinquished by either the Assignee or the Assignor except by a written instrument executed by both of them.

Date  5/15        , 2006.                          Date:   May 4, 2006

Assignee: National City Commercial Capital Corporation      Assignor: National Machine Tool Financial Corporation

By: _Molly Williams_                                By: _Susan M. Adamatis_
                                                        Susan M. Adamatis
Title: _Team Leader_                                Title: Vice President

**EXHIBIT**

C

**EXHIBIT**

D

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

2005 DEC 16 PM 4:30

A. NAME & PHONE OF CONTACT AT FILER [optional]
Phone:(800) 331-3282  Fax: (818) 662-4141

UCU112/19/05:06:0278:
20.00 CK01
SOSIL 13:39  10475651 FS

B. SEND ACKNOWLEDGEMENT TO: (Name and Address)

512234 INATIONALMACH

UCC Direct Services
P.O. Box 29071
Glendale, CA 91209-9071

6966510

ILIL

DEC 16 2005

**1. DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| KORLE BU MEDICAL GROUP, LTD. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX | |
|---|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2929 SOUTH ELLIS AVE | CHICAGO | IL | 60616 | |

| 1d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | CORPORATION | IL | 63182001 □NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX | |
|---|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | □NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| NATIONAL CITY COMMERCIAL CAPITAL CORPORATION | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX | |
|---|---|---|---|---|

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 995 DALTON AVENUE, SUITE 400 | CINCINNATI | OH | 45203 | |

4. This FINANCING STATEMENT covers the following collateral:

One (1) New Zonare z.One Ultrasound Unit including all attachments and accessories.

| 5. ALTERNATIVE DESIGNATION [if applicable] | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR | SELLER/BUYER | AG. LIEN | NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. □ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.  Attach Addendum  [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]  [optional] | All Debtors | Debtor 1 | Debtor 2 |
|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA
6966510

ACKNOWLEDGMENT COPY - NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

Prepared by UCC Direct Services, P.O. Box 29071,
Glendale, CA 91209-9071  Tel: (800) 331-3282

## __VERIFICATION__

I have reviewed the foregoing Amended Verified Complaint in this matter and attest that the allegations and statements therein are true and correct, except to matters stated to be on information and belief and as to such matters as the undersigned certified as aforesaid that she verily believes the same to be true.

FURTHER AFFIANT SAYETH NOT.

SUBSCRIBED AND SWORN to before me

this 5ᵗʰ day of November 2007

_____
Notary Public

JOHN R. LENHART
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Date Section 147.03 O.R

AO 440 (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

National City Commercial Capital Company

CASE NUMBER:

     V.

Korle Bu Medical Group, Ltd. & Dr. John
Acquaye-Awah, individually

**07CV6124
JUDGE MANNING
MAG. JUDGE SCHENKIER**

TO: (Name and address of Defendant)

Korle Bu Medical Group, Ltd.
John Acquaye-Awah, Registered Agent
5517 S. Michigan Ave.
Chicago, IL 60637

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Vincent T. Borst, Esq.
Jennifer E. Gaylord, Esq.
Askounis & Borst, P.C.
180 N. Stetson St., Ste. 3400
Chicago, IL 60601

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time
after service.

NOTE: When the print dialogue
box appears, be sure to uncheck
the Annotations option.

MICHAEL W. DOBBINS, CLERK

_____
(By) DEPUTY CLERK

**OCT 3 0 2007**
_____
DATE

**EXHIBIT**

B

IN THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

National City Commerical Capital
Company

vs.

Korle Bu Medical Group, Ltd. and
Dr. John Acquaye-Awah, individually

Case Number    07 CV 6124

## AFFIDAVIT OF SERVICE

I, Tommie Levy, being first duly sworn on oath deposes and states that I am over the age of 18 years and not a party to this action, and on the 17 day of January, 2008, at 12:00 PM at 5517 South Michigan Ave., Chicago, IL 60637, did serve the following document(s):

**Summons and Complaint**

Upon:  **Korle Bu Medical Group, Ltd.**

By:  ☑ Personally serving to:  Linda Acquaye-Awah-Vice President

☐ leaving copies at the usual place of abode with:

a member of the household 13 years or upwards and informed that person of the contents thereof

☐ by mailing copies of said document(s) in a sealed envelope with postage fully prepaid to the defendant:

at 5517 South Michigan Ave., Chicago, IL 60637 on

| Description: | Sex | **Female** | Race | **White** | Approximate Age | **55** |
|---|---|---|---|---|---|---|
| | Height | **5'6** | Weight | **198** | Hair Color | **Brown** |

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this affidavit of service are true and correct.

Further the Affiant Sayeth Naught:

Tommie Levy
United Processing, Inc.
55 West Wacker Drive, 9th Floor
Chicago, IL  60601
IL License #117-001101

AO 440  (Rev. 05/00) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

National City Commercial Capital Company

C.

V.

A₂    **07CV6124**
**JUDGE MANNING**
D₁    **MAG. JUDGE SCHENKIER**

Korle Bu Medical Group, Ltd. & Dr. John
Acquaye-Awah, individually

MAGISTRATE JUDGE:

TO: (Name and address of Defendant)

Dr. John Acquaye-Awah
9033 Reserve Drive
Willow Springs, IL 60480

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Vincent T. Borst, Esq.
Jennifer E. Gaylord, Esq.
Askounis & Borst, P.C.
180 N. Stetson St., Ste. 3400
Chicago, IL 60601

an answer to the complaint which is herewith served upon you, within _____ 20 _____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the
relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period of time
after service.

NOTE: When the print dialogue
box appears, be sure to uncheck
the Annotations option.

MICHAEL W. DOBBINS, CLERK

(By) DEPUTY CLERK

_____ OCT 3 0 2007
DATE

**EXHIBIT**

C

IN THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

National City Commerical Capital
Company

vs.

Korle Bu Medical Group, Ltd. and
Dr. John Acquaye-Awah, individually

Case Number    07 CV 6124

## AFFIDAVIT OF SERVICE

I, Randy Mucha, being first duly sworn on oath deposes and states that I am over the age of 18 years and not a party to this action, and on the 17 day of January, 2008, at 08:40 PM at 9033 Reserve Drive, Springs, IL 60480, did serve the following document(s):

**Summons and Complaint**

Upon:  **Dr. John Acquaye-Awah**

By:  ☑ Personally serving to:  Dr. John Acquaye-Awah

☐ leaving copies at the usual place of abode with:

a member of the household 13 years or upwards and informed that person of the contents thereof

☐ by mailing copies of said document(s) in a sealed envelope with postage fully prepaid to the defendant:

at 9033 Reserve Drive, Springs, IL 60480 on

| Description: | Sex | **Male** | Race | **Black** | Approximate Age | **47** |
|---|---|---|---|---|---|---|
| | Height | **5'10** | Weight | **175** | Hair Color | **Black** |

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this affidavit of service are true and correct.

Further the Affiant Sayeth Naught:

Randy Mucha
United Processing, Inc.
55 West Wacker Drive, 9th Floor
Chicago, IL 60601
IL License #117-001101

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

NATIONAL CITY COMMERCIAL CAPITAL )
COMPANY, LLC as successor-by-merger to )
to NATIONAL CITY COMMERCIAL CAPITAL )
CORPORATION, as assignee of NATIONAL )        Case No.:07-cv-06124
MACHINE TOOL FINANCIAL CORP., )
  )
     Plaintiff, )
  v. )
  )
KORLE BU MEDICAL GROUP, LTD. )
and DR. JOHN ACQUAYE-AWAH individually, )
  )
     Defendants. )

### AFFIDAVIT OF JENNIFER E. GAYLORD

I, Jennifer E. Gaylord, being first duly sworn upon oath, depose and state as follows:

1.   I am an associate attorney at Askounis & Borst, P.C. and am licensed to practice law in the State of Illinois.

2.   Our law firm represents the Plaintiff, National City Commercial Capital Company, LLC as successor-by-merger to National City Commercial Capital Corporation ("National City"), as assignee of National Machine Tool Financial Corp. in the above captioned matter.

3.   On February 26, 2008 I checked the electronic docket for the above cause and found that Defendants have not filed an appearance and/or answer to National City's Amended Complaint as of that date.

FURTHER AFFIANT SAYETH NAUGHT.

              _____
              Jennifer E. Gaylord, Esq.

Subscribed and sworn to before
me this 26th day of February 2008.

_____
   Notary Public

OFFICIAL SEAL
SANDRA GUERRERO
Notary Public - State of Illinois
My Commission Expires Mar 08, 2011

**EXHIBIT**

D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

NATIONAL CITY COMMERCIAL CAPITAL )
COMPANY, LLC as successor-by-merger to )
to NATIONAL CITY COMMERCIAL CAPITAL )
CORPORATION, as assignee of NATIONAL )    Case No.:07-cv-06124
MACHINE TOOL FINANCIAL CORP., )
                            )
            Plaintiff, )
      v. )
                            )
KORLE BU MEDICAL GROUP, LTD. )
and DR. JOHN ACQUAYE-AWAH individually, )
                            )
           Defendants. )

### AFFIDAVIT OF MILITARY SERVICE

I, Jennifer E. Gaylord, being first duly sworn upon oath, depose and state that, upon information and belief, the Defendant, Dr. Acquaye-Awah, is not in the military service of the United States or any of its Allies as defined in the Soldiers' and Sailors' Civil Relief Act, of 1940, as amended. I further state that the remaining defendant is not a natural person.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Jennifer E. Gaylord, Esq.

Subscribed and sworn to before

me this 26th day of February 2008.

_____
Notary Public

OFFICIAL SEAL
SANDRA GUERRERO
Notary Public - State of Illinois
My Commission Expires Mar 08, 2011

EXHIBIT

E

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

NATIONAL CITY COMMERCIAL CAPITAL )
COMPANY, LLC as successor-by-merger to )
to NATIONAL CITY COMMERCIAL CAPITAL )
CORPORATION, as assignee of NATIONAL )    Case No.:07-cv-06124
MACHINE TOOL FINANCIAL CORP., )
                                       )
                    Plaintiff,         )
         v.                            )
                                       )
KORLE BU MEDICAL GROUP, LTD.           )
and DR. JOHN ACQUAYE-AWAH individually, )
                                       )
                    Defendants.        )

## AFFIDAVIT OF TINA BOWLING

I, Tina Bowling, being first duly sworn upon oath, depose and state as follows:

1.      I am over the age of 18. I am competent to testify as to matters hereinafter set forth based upon my personal knowledge of such matters and if called to testify in this action, I would testify that the following facts are true and correct.

2.      I am the Litigation Specialist for NATIONAL CITY COMMERCIAL CAPITAL COMPANY, LLC as successor-by-merger to National City Commercial Capital Corporation ("NATIONAL CITY"), as assignee of National Machine Tool Financial Corp..

3.      I am responsible for the collection aspects of certain accounts, including the contract referenced herein between NATIONAL CITY and Korle Bu Medical Group, Ltd. ("KORLE BU") and personally guaranteed by Dr. John Acquaye-Awah ("DR. ACQUAYE-AWAH") (collectively, the "Defendants"). I am the custodian of NATIONAL CITY's records relating to this account and have reviewed NATIONAL CITY's records in preparation of this Affidavit.

EXHIBIT

F

4.     I am familiar with NATIONAL CITY's custom and business practices relating to the posting of payments to accounts.   When a payment is received by NATIONAL CITY, it is NATIONAL CITY's business custom and practice always to credit the obligor's account and note the obligor's payment in a computer software accounting program related to that particular customer's account.  I have reviewed NATIONAL CITY's accounting software relating to KORLE BU's payments to NATIONAL CITY under the contracts that form the basis for this action.

5.     I am competent to testify as to matters set forth in this affidavit based upon my personal knowledge of such matters and if called to testify in this action, I would testify that all statements set forth in this affidavit are true and correct.  I have either personal knowledge of all events recorded within the records of NATIONAL CITY regarding NATIONAL CITY and KORLE BU and DR. ACQUAYE-AWAH, or I am qualified and authorized to testify about the methods and processes used by NATIONAL CITY to collect and record the information and data contained within NATIONAL CITY's files regarding all events set forth in the Amended Complaint which NATIONAL CITY filed in this matter.

6.     I have access to all of NATIONAL CITY's files and records concerning NATIONAL CITY and KORLE BU and DR. ACQUAYE-AWAH, and have personal knowledge of the contents therein.

7.     Information recorded and documents collected in NATIONAL CITY's files are recorded and collected as part of the regular practice of NATIONAL CITY's business, are made in the regular course of its regular business activities, and are compiled by its employees at or near the time of transmission of that information by an employee who has personal knowledge of the transmitted facts.

2

8.    In preparation of this affidavit, I have reviewed all of NATIONAL CITY's business records as they relate to all transactions concerning the contract which is the subject matter of the Amended Complaint filed in this case

9.    On or about February 28, 2006, KORLE BU and National Machine Tool Financial Corporation ("Machine Tool"), a non-party, entered into Lease Agreement 65573000 (the "Lease"). A true and correct copy of the Lease is attached to the Amended Complaint as Exhibit A.

10.    In order to induce Machine Tool to enter into the Lease, DR. ACQUAYE-AWAH personally guaranteed all obligations under the Lease.  A true and correct copy of the "Guaranty" is attached to the Amended Complaint as part of Exhibit A.

11.    Pursuant to the Lease, Machine Tool purchased the following equipment: One (1) new Zonare Z.One Ultrasound Unit, S/N 1156S105L, including all attachments and accessories (the "Equipment") and subsequently leased the Equipment to KORLE BU.

12.    The Equipment was delivered and accepted by KORLE BU on or about January 2, 2006.  A true and correct copy of the Delivery and Acceptance Notice is attached to the Amended Complaint as Exhibit B.

13.    On or about May 15, 2006, Machine Tool assigned all of its right, title and interest in the Lease to NATIONAL CITY. A true and correct copy of the Sale and Assignment of Lease Without Recourse is attached to the Amended Complaint as Exhibit C.

14.    In order to secure payments under the Lease, KORLE BU granted Machine Tool a continuing first priority security interest in the Equipment, which was subsequently assigned to NATIONAL CITY.  A true and correct copy of the UCC Financing Statement is attached to the Amended Complaint as Exhibit D.

15.    Pursuant to the terms of the Lease, Korle Bu agreed to make sixty (60) consecutive monthly payments of $1,788.94 each.

16.    Korle Bu defaulted under the terms of the Lease by failing and refusing to make the monthly payments when due.

17.    As a result of Korle Bu's default under the Lease, National City is entitled to possession of the Equipment in accordance with the terms of the Lease.

18.    National City has made written demand upon Korle Bu and Dr. Acquaye-Awah for return of the Equipment.

19.    Korle Bu is wrongfully in possession and control of the Equipment.

20.    Upon information and belief, the value of the Equipment is $10,000.00.

21.    National City has been unable to secure possession of its Equipment through peaceful means.

22.    The Equipment has not been taken for any tax, assessment or fine levy by virtue of the law of any state against property of National City, or against National City individually, nor seized under any lawful process against the goods and chattels of National City subject to such lawful process nor held by virtue of any order of replevin against National City.

23.    The total present value currently due under the Lease is as follows: the total discounted balance due under the Lease is $81,058.39 plus prejudgment interest at the statutory rate of 9% pursuant to 815 ILCS 205/4(1); and repossession expenses are to be determined.

24.    Defendants have failed and refused to pay the amount due NATIONAL CITY and have failed to return the Equipment to NATIONAL CITY.

25.    All Exhibits to the Amended Complaint are true, correct and genuine.

4

26.    I have reviewed NATIONAL CITY's Amended Complaint and Motion for

Default Judgment in this matter and attest that the allegations therein are true and accurate except

as modified by this Affidavit.

FURTHER AFFIANT SAYETH NAUGHT

By: _____

Tina Bowling
Litigation Specialist

Subscribed and sworn to before me

this ___ day of _____, 2008.

_____
Notary Public

JOHN R. LENHAR.
Attorney at Law
Notary Public, State of Ohio
My Commission Has No Expiration
Date  Section .47.C3 O.R.

5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

NATIONAL CITY COMMERCIAL CAPITAL )
COMPANY, LLC as successor-by-merger to )
to NATIONAL CITY COMMERCIAL CAPITAL )
CORPORATION, as assignee of NATIONAL ) Case No.:07-cv-06124
MACHINE TOOL FINANCIAL CORP., )
 )
     Plaintiff, )
 )
  v. )
 )
KORLE BU MEDICAL GROUP, LTD. )
and DR. JOHN ACQUAYE-AWAH individually, )
 )
     Defendants. )

## AFFIDAVIT OF JENNIFER E. GAYLORD IN
## SUPPORT OF REQUEST FOR ATTORNEYS' FEES AND COSTS

I, Jennifer E. Gaylord, being first duly sworn upon oath, depose and state as follows:

1. I am an associate attorney at Askounis & Borst, P.C. and am licensed to practice law in the State of Illinois.

2. Our law firm represents the Plaintiff, National City Commercial Capital Company, LLC as successor-by-merger to National City Commercial Capital Corporation ("National City"), as assignee of National Machine Tool Financial Corp. in the above captioned matter.

3. Pursuant to the agreement between National City and the defendants, Korle Bu Medial Group, Ltd. and Dr. John Acquaye-Awah, individually, National City is entitled to $4,588.00 in fees for services rendered to date in this matter and requests leave to file an amended fee schedule, taking into account additional expenses incurred in the enforcement of this judgment order. Current charges are based upon our hourly billing records, created contemporaneously with the rendering of legal services, a copy of which attached hereto as Exhibit 1.



**EXHIBIT**

G

4.      In addition, our firm incurred $823.61 in costs in this matter on behalf of National City.  A copy of the current costs is attached hereto as Exhibit 2.

5.      The total fees and costs incurred to date by our firm on behalf of National City in connection with the prosecution in the above referenced matter is $5,411.61.

6.      The number of hours spent and the rate charged per hour is fair and reasonable, and within the normal standards of the legal community for the type of services performed.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Jennifer E. Gaylord, Esq.

Subscribed and sworn to before

me this 26th day of February 2008.

_____
Notary Public

```
OFFICIAL SEAL
SANDRA GUERRERO
Notary Public - State of Illinois
My Commission Expires Mar 08, 2011
```

U:\JGaylord\National City\Korle Bue Medical Group\Pleadings\Motion for Default Docs\Aff for Fees for JEG. Exhibit G.wpd #1123.4921

-2-

ASKOUNIS & BORST, P.C.

| Client | Trans Date | Atty | H P | Tcd | Rate | Hours to Bill | Amount | |
|--------|-----------|------|-----|-----|------|--------------|--------|---|
| **Client ID 2136.12308 NATIONAL CITY COMMERICAL CAPITAL** | | | | | | | | |
| 2136.12308 | 09/11/2007 | 2 | A | 1 | 275.00 | 1.50 | 412.50 | Review of file in new matter. |
| 2136.12308 | 09/12/2007 | 2 | A | 1 | 275.00 | 0.90 | 247.50 | Complete review of file; commencing preparation of Complaint; preparation of e-mail to Ms. Bowling regarding matter. |
| 2136.12308 | 09/12/2007 | 30 | A | 1 | 195.00 | 0.70 | 136.50 | Review of file regarding strategy; began prepration of demand letter and Complaint. |
| 2136.12308 | 09/13/2007 | 30 | A | 1 | 195.00 | 0.50 | 97.50 | Review of file regarding strategy; began prepration of demand letter and Complaint. |
| 2136.12308 | 09/20/2007 | 2 | A | 1 | 275.00 | 0.30 | 82.50 | Review of and revision of demand letter; review of file. |
| 2136.12308 | 09/28/2007 | 30 | A | 1 | 195.00 | 0.40 | 78.00 | Review and revision of Complaint. |
| 2136.12308 | 09/28/2007 | 31 | A | 1 | 195.00 | 2.20 | 429.00 | Review file; Draft demand letter; Draft Complaint. |
| 2136.12308 | 10/01/2007 | 31 | A | 1 | 195.00 | 0.40 | 78.00 | Revision of Complaint. |
| 2136.12308 | 10/02/2007 | 30 | A | 1 | 195.00 | 0.30 | 58.50 | Review and revision of Complaint; computation of damages. |
| 2136.12308 | 10/03/2007 | 2 | A | 1 | 275.00 | 0.70 | 192.50 | Review of and revision of Complaint; conference with Ms. Gaylord regarding same. |
| 2136.12308 | 10/03/2007 | 30 | A | 1 | 195.00 | 0.30 | 58.50 | Review and revision of Complaint; conference with Mr. Borst regarding the same. |
| 2136.12308 | 10/04/2007 | 2 | A | 1 | 275.00 | 0.90 | 247.50 | Final review and revision of Complaint; conference with Ms gaylord regarding the same. |
| 2136.12308 | 10/08/2007 | 30 | A | 1 | 195.00 | 0.40 | 78.00 | Review and revision of Complaint prior to sending to client. |
| 2136.12308 | 10/16/2007 | 2 | A | 1 | 275.00 | 0.60 | 165.00 | Review of e-mail from Ms. Bowling; review of revised Complaint; preparation of e-mail to Ms. Bowling regarding venue. |
| 2136.12308 | 10/17/2007 | 30 | A | 1 | 195.00 | 0.20 | 39.00 | Review and revision of Complaint; passed along to Ms. Bowling for review and to execute the Affidavit. |
| 2136.12308 | 10/22/2007 | 30 | A | 1 | 195.00 | 0.20 | 39.00 | Review and revision of Complaint prior to filing. |
| 2136.12308 | 10/29/2007 | 2 | A | 1 | 275.00 | 0.40 | 110.00 | Final review of and revision of Complaint prior to filing of same. |
| 2136.12308 | 11/01/2007 | 30 | A | 1 | 195.00 | 0.20 | 39.00 | Review of Court Order regarding jurisdictional allegations; memo to file. |
| 2136.12308 | 11/02/2007 | 30 | A | 1 | 195.00 | 0.30 | 58.50 | Preparation of amended Complaint; review and revision of the same; checked to verify addresses. |
| 2136.12308 | 11/05/2007 | 2 | A | 1 | 275.00 | 0.60 | 165.00 | Review of Court Order; review of Complaint regarding same. |
| 2136.12308 | 11/30/2007 | 2 | A | 1 | 275.00 | 0.40 | 110.00 | Review of Court Order; review of status of service of process. |
| 2136.12308 | 12/03/2007 | 2 | A | 1 | 275.00 | 0.10 | 27.50 | Review of Court Notice. |
| 2136.12308 | 12/06/2007 | 2 | A | 1 | 275.00 | 0.40 | 110.00 | Review of Notice from Court; conference with legal assistant regarding same. |
| 2136.12308 | 12/18/2007 | 2 | A | 1 | 275.00 | 0.30 | 82.50 | Review of status of suit. |
| 2136.12308 | 01/10/2008 | 30 | A | 1 | 195.00 | 2.00 | 390.00 | Attended Court hearing regarding status; memo to file. |
| 2136.12308 | 01/15/2008 | 30 | A | 1 | 195.00 | 0.20 | 39.00 | Review of Court Order regarding status hearing; memo to file. |
| 2136.12308 | 01/24/2008 | 2 | A | 1 | 275.00 | 0.40 | 110.00 | Review of status of service; review of notice from Court regarding same; review of file. |
| 2136.12308 | 02/05/2008 | 2 | P | 1 | 275.00 | 0.40 | 110.00 | Review of letter from financial planner regarding Korle Bu debts. |
| 2136.12308 | 02/11/2008 | 30 | P | 1 | 195.00 | 0.30 | 58.50 | Review of file in preparation for Court hearing tomorrow. |
| 2136.12308 | 02/11/2008 | 2 | P | 1 | 275.00 | 0.30 | 82.50 | Review of status; review of file. |
| 2136.12308 | 02/12/2008 | 30 | P | 1 | 195.00 | 2.50 | 487.50 | Attended Court hearing regarding status; review of status of service; prepared strategy for default and began preparation of documents; memo to file. |
| 2136.12308 | 02/19/2008 | 2 | P | 1 | 275.00 | 0.40 | 110.00 | Review of Court Order; review of file; memo to file regarding new Court date. |
| 2136.12308 | 02/22/2008 | 30 | P | 1 | 195.00 | 0.30 | 58.50 | Began preparation of Motion for Default Judgment. |
| **Total for Client ID 2136.12308** | | | | Billable | | **20.00** | **4,588.00** | NATIONAL CITY COMMERICAL CAPITAL NATIONAL CITY V. KORLE BU MEDICAL GROUP, LTD. |

**GRAND TOTALS**

| | | Billable | 20.00 | 4,588.00 |
|---|---|---------|-------|----------|

EXHIBIT

tabbies®    1

ASKOUNIS & BORST, P.C.

| Client | Trans Date | Atty | H P | Tcd | Rate | Amount | |
|--------|-----------|------|-----|-----|------|--------|---|
| **Client ID 2136.12308 NATIONAL CITY COMMERICAL CAPITAL** | | | | | | | |
| 2136.12308 | 09/28/2007 | 2 | A | 41 | | 11.24 | Postage. |
| 2136.12308 | 10/29/2007 | 2 | A | 108 | | 350.00 | Costs advanced for (279) CLERK OF THE COURT for fee to file Complaint. |
| 2136.12308 | 10/31/2007 | 2 | A | 109 | 0.150 | 10.50 | Photo copies. |
| 2136.12308 | 11/29/2007 | 2 | A | 40 | | 11.45 | Delivery via (72) FEDERAL EXPRESS. |
| 2136.12308 | 11/29/2007 | 2 | A | 44 | | 25.00 | Court filing via (811) ACCURATE CLERKING, INC. |
| 2136.12308 | 11/29/2007 | 2 | A | 44 | | 25.00 | Court filing via (811) ACCURATE CLERKING, INC. |
| 2136.12308 | 11/30/2007 | 2 | A | 109 | 0.150 | 4.35 | Photo copies. |
| 2136.12308 | 12/10/2007 | 2 | A | 108 | | 150.00 | Costs advanced for (1551) UNITED PROCESSING, INC. for attempted service of Complaint and Summons on Dr. John Acquaye-Awah and Korle Bu Medical Group. |
| 2136.12308 | 12/31/2007 | 2 | A | 44 | | 35.00 | Court filing via (811) ACCURATE CLERKING, INC. |
| 2136.12308 | 01/24/2008 | 2 | A | 108 | | 186.00 | Costs advanced for (1551) UNITED PROCESSING, INC. for service of Complaint and Summons on Awah and Korle Bu Medical Group. |
| 2136.12308 | 01/29/2008 | 2 | A | 40 | | 12.67 | Delivery via (72) FEDERAL EXPRESS. |
| 2136.12308 | 01/31/2008 | 2 | A | 48 | | 2.40 | Costs advanced to Public Access to Court Electronic Records. |

**Total for Client ID 2136.12308**                    Billable          823.61   NATIONAL CITY COMMERICAL CAPITAL
                                                                                  NATIONAL CITY V. KORLE BU MEDICAL GROUP, LTD.

**GRAND TOTALS**

                                                       Billable          823.61

EXHIBIT

tabbies'

2